**Betty M. PALMISANO, as Administratrix of the Estate of Cecil E. Foltz, Jr., Plaintiff,**

v.

**NEWS SYNDICATE CO., Inc., Defendant.**

United States District Court
S. D. New York.
April 18, 1955.

See also, D.C., 114 F.Supp. 599.

John J. Von Der Lieth, New York City, for plaintiff.

Townley, Updike, Carter & Rodgers, New York City, J. Howard Carter, Andrew L. Hughes, New York City, of counsel, for defendant.

IRVING R. KAUFMAN, District Judge.

This is an action for an alleged libel based upon the publication of an editorial in the November 7, 1951 issue of defendant's newspaper, the "Daily News". This action was instituted by Cecil E. Foltz, Jr. (hereinafter referred to as "plaintiff") on November 30, 1951. He died on February 11, 1954, and his administratrix has been substituted as party plaintiff. Plaintiff is a citizen of New Jersey. The defendant is a citizen of New York which publishes its paper and has its principal office in this state. Plaintiff claims that the editorial, by innuendo, charges that he was a person suspected of Communist activities.

The instant motion is made by the defendant to dismiss the complaint on the ground that the action is governed by the law of New Jersey and under that law the action abated upon the death of the plaintiff.

██ Under New York law the libel claim would survive the death of the injured party, Decedent Estate Law, McK.Consol.Laws, c. 13, § 119, but apparently under New Jersey law the claim would abate. N.J.Stat.Ann. Title 2A: 15–3; cf. Alpaugh v. Conkling, 1915, 88 N.J.L. 64, 95 A. 618. Therefore, for the defendant to prevail the Court would be required to hold that New Jersey law is applicable to the facts *as they appear solely from the face of the complaint.* An oft-quoted rule needs re-emphasis here: "[A] complaint should not be dismissed for insufficiency *unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim.*" 2 Moore's Federal Practice (2d Ed.) 2245.

In Mattox v. News Syndicate, 2 Cir., 1949, 176 F.2d 897, 900, 12 A.L.R.2d 988, the Court of Appeals for this Circuit, in applying as the New York choice of law rule in a multi-state libel case the law of the plaintiff's domicile, remarked:

> *."On the record* the plaintiff was not a person of prominence, and *it does not appear* that she was known outside [her domicile]; in any event *there is no suggestion* that she was known in New York. * * * [I]*t does not appear* that she suffered any damages in that or in any other state * * *." (Italics supplied.)

It should be noted that the decision in Mattox was reached after a full trial and verdict; thus, the Court had the opportunity, not present on the instant motion, to determine the extent of the plaintiff's reputation in states other than her domicile. In Brayton v. Crowell-Collier Pub. Co., 2 Cir., 1953, 205 F.2d 644, 646, the Court of Appeals, in noting that the plaintiff "was well known in many states", said:

> "Since jurisdiction here rests on diversity of citizenship, the New York conflict-of-laws rules govern.

What 'choice of law,' under those rules New York courts will make in such a case is by no means clear. We need not, however, explore that question \* \* \*."

Logically, in order for the defendant to prevail on this motion addressed solely to the face of a pleading which merely alleges plaintiff's domicile and the domicile and main publishing office of the defendant, each of the following propositions must be held to be the law of New York in a multi-state libel situation:

(1) That New York would view such a libel as a single composite tort for choice-of-law purposes, rather than a separate tort which in each state of impact is governed by that particular state's law (we shall assume this *arguendo*);[1]

(2) That New York, despite the fact (which must be assumed here) that it was the situs of the eight remaining conflict-of-laws "contacts" deemed relevant by writers and some courts,[2] would in every conceivable situation apply the law of plaintiff's domicile;[3]

1. The so-called "single publication rule" which embodies the composite tort concept has been applied in greatly varying legal contexts each of which has policies and purposes which are at times inconsistent with the ends sought to be furthered in one of the other legal contexts. For instance, the supposedly all-purpose "single publication rule" may be applied in these differing contexts: achieving joinder in one action of separate local libel claims; determining, for purposes of the forum's statute of limitations, when a claim for libel based on successive printings of a magazine or a book arose; determining the venue of a local libel claim as amongst the various subdivisions of a state; and, for choice-of-law purposes, determining the single state whose laws should apply to multistate publication of a libel. Note, 62 Harv.L.Rev. 1041 (1949). New York has held the "single publication rule" applicable for purposes of its statute of limitations, Gregoire v. G. P. Putnam's Sons, 1948, 298 N.Y. 119, 81 N.E.2d 45, but has not determined its applicability for choice-of-law purposes.

A single publication rule for choice-of-law purposes is certainly favorable from the standpoint of trial convenience. The burden of charging a jury on the laws of possibly all the 48 states seems insuperable. Moreover, the jury, in assessing damages, is more likely to view the transaction as an integrated whole and to disregard the fine distinctions drawn between varying laws. See Note, 60 Harv.L.Rev. 941, 945 (1947); Note, 48 Columbia Law Rev. 932 (1948); Cheatham & Reese, Choice of the Applicable Law, 52 Columbia Law Rev. 959, 977 (1952); Hartmann v. Time, Inc., 3 Cir., 1948, 166 F.2d 127, 134 (Single publication rule applicable for local law purposes; multiple publication rule applicable for conflict of laws purposes).

2. The following solutions as to choice-of-law in multistate libel cases have been advanced by law review writers:
   (1) the state of plaintiff's domicile;
   (2) the state of plaintiff's principal activity to which the alleged defamation relates;
   (3) the state where plaintiff in fact suffered the greatest harm;
   (4) the state of the publisher's domicile or incorporation;
   (5) the state where defendant's main publishing office is located;
   (6) the state of principal *circulation*;
   (7) the place of emanation;
   (8) the state where the libel was first seen; and
   (9) the law of the forum.
   See Note, 28 N.Y.U. Law Rev. 1006, 1010 (1953); Remmers, Recent Legislative Trends in Defamation by Radio, 64 Harv.L.Rev. 727, 734 (1951); Ludwig, "Peace of Mind" in 48 Pieces v. Uniform Right of Privacy; 32 Minn.L.Rev. 734, 760 (1948); Note, 60 Harv.L.Rev. 941 (1947); see Dale System, Inc., v. General Teleradio, Inc., D.C.S.D.N.Y.1952, 105 F. Supp. 745.

3. It should be noted that even in stating that the instant plaintiff's domicile is in New Jersey, the following factual and legal assumptions favorable to the *defendant* have been made:
   (1) That plaintiff has only one "domicile" for all purposes.
   (2) That "domicile" for the purposes of the New York choice-of-law rule in a multistate libel situation is equivalent to state "citizenship" for the purpose of pleading diversity in a federal action.
   (3) That plaintiff was domiciled in New Jersey on the date the libel was published. (Nov. 7, 1951); the complaint shows only that plaintiff was a citizen of New Jersey on the date the action was commenced (Dec. 3, 1951).

(3) That New York, despite the fact that it was the situs of eight suggested "contacts" would apply the domiciliary law even in a situation where plaintiff bases his claim for damages at the trial solely on the publication and distribution in New York of the libel so far as it affected his reputation in New York.[4]

The Court is not prepared so to hold. The second proposition does not appear to be a reasonably complete solution to the vexing problem of choice-of-law in a multi-state libel context. While the domicile of the plaintiff is *usually* the place where his reputation is most injured, and, therefore, considering the gravamen of a claim for libel, it would appear that the domiciliary law should be applied,[5] the assumption that plaintiff's domicile is also the place of his principal reputation should not be transformed into a rigid rule, for the purposes of "certainty" and ease of application, which would reach situations where the assumption is not in accord with the facts. If the state of plaintiff's *principal* reputation is different from the state of his technical domicile, [as opposed to complete localization of reputation in the domiciliary state, Mattox, supra, or fairly even division amongst many or all states (a person of "prominence")], and to make the case progressively stronger, the situs of the other contacts considered by legal writers are partially, primarily or wholly in the state of principal reputation, then the assumption implicit in the concept of domicile should give way to the facts.

 This case points up the utter inefficacy of attempting to have a question as complex as this decided solely upon the face of the complaint, which, so far as relevant to the instant issue, merely alleges the diversity of "citizenship" between the parties for the purpose of sustaining federal jurisdiction. The point to be emphasized here is that upon a motion addressed solely to the face of a pleading, the Court cannot be expected, in one broad sweep, to fill in both the factual and legal interstices in an unusual case. The proceedings at trial are better suited to perform these functions.

The motion is denied. So ordered.

---

4. Assuming that both the second and third propositions are the law of state X, it may be that any future claim based upon out-state circulation during the same time period will be barred under res judicata principles in state X and, under the Full Faith and Credit Clause, in all other states of the Union.

5. See Dale System v. Time, Inc., D.C. Conn.1953, 116 F.Supp. 527, 530 (Hincks, J.); (domiciliary law controls "because the most reasonable inference is that there he is better known than elsewhere"); Fouts v. Fawcett Publications, Inc., D.C.Conn.1953, 116 F.Supp. 535 (Hincks, J.); Hazlitt v. Fawcett Publications, Inc., D.C.Conn.1953, 116 F.Supp. 538 (Hincks, J.); Remmers, supra; Ludwig, supra; Note, 60 Harv.L.Rev. supra; But see Dale System, Inc., v. General Teleradio, Inc., D.C.S.D.N.Y. 1952, 105 F.Supp. 745 (technical corporate domicile in Connecticut as in Dale System v. Time, supra, but New York law applied. In Dale System v. Time, on similar "contacts", Connecticut law applied.)