Conway, Ch. J.
This is a libel action based on alleged defamatory statements contained in the “ Yorkville Democrat ”, a political campaign document in the form and style of a tabloid newspaper, which was distributed in connection with a primary campaign for the Democratic leadership of the 8th Assembly District North, New York County.
The plaintiff Frank J. Stella was the opponent in that campaign of the incumbent, defendant James J. Farley, executive member of the defendant James J. Farley Association, Inc. Plaintiff Toomey was one of the workers or captains in behalf of plaintiff Stella. The defendant Lawrence P. Cuccia is a member of defendant Farley Association. It is alleged that the defendants are the editors, proprietors and publishers of the “ Yorkville Democrat.”
Plaintiffs Toomey and Stella had commenced their political activity in 1935 as supporters of the then leader of that area, one Ed Loughlin. The so-called Loughlin Flood organization had supported Vito Marcantonio for Congress from that area for a number of years. In 1949 defendant Farley won the district leadership in a primary fight “ against the regular organization ”. This led to the nomination in 1950 by both the Democratic and Republican parties of defendant Donovan as candidate for Congress, and that same year he ended the congressional career of the late Vito Marcantonio by defeating him in that election. It is alleged that in mid-August, 1951, with the primary election coming up on Tuesday, August 21, the defendants Farley, Cuccia and Donovan, . as well as many others' interested in maintaining the Farley leadership, caused to be published a newspaper called the “ Yorkville Democrat.”
The complaint charges in substance that in that newspaper plaintiffs were accused of communist affiliations. Thus the complaints of both Toomey and Stella allege that:
‘ ‘ Fourth : That by the words so quoted as above, which were printed, published and widely circulated by the defendants as aforesaid, defendants meant and intended to mean that plaintiff was a member of the Communist Party and further that she [‘ he ’ in the Stella complaint] owed her [‘ his ’ in the Stella complaint] allegiance to the Union of the Soviet Republic and not the United States of America or the city or community in which she [‘ he ’ in the Stella complaint] lived, and that said words were so understood by the readers of defendants’ said *77 newspaper. ’ ’ The reference to ‘ ‘ the words so quoted ’ ’ in the fourth paragraph of the complaint relate to the alleged libelous articles which stated among other things:
1. “ He [Stella] and his workers are all pals of Vito Marcantonio, notorious champion of communists and seditionists.”
2. “ Stella is Marcantonio’s man.”
3. “ Marcantonio’s defeat is one of Stella’s principal complaints.”
4. ‘£ "When Marcantonio became red-hot Stella resigned — or had to resign [as Assistant U. S. Attorney].”
5. 1 £ Under his pal Marcantonio’s tutelage he [Stella] is trying to hammer his way back in.”
6. £ £ In another column of this paper we print the names and addresses of several henchmen of Marcantonio who comprise Stella’s crew of fellow-travelers.”
7. ££ "We have heard Stella’s left-wing pal griping about jobs.”
8. ££ Naturally that’s all they can see in politics because with jobs left-wingers have cozy places for burrowing from within.”
9. “ Spike the Commies.”
10. “ Reject Emphatically the Stellas — the Fellow-Travelers. ’ ’
11. ££ Keep the Doors Closed on the Reds and the Marcantonios.”
12. ££ Marcantonio Cohorts Dominate Campaign Opposition to Farley.”
13. “ Supporters oe Stella Unmasked as Reds.”
14. “So that the Democrats of this district will know them, we list them by name, giving their addresses:
Frank J. Stella * * *
Anne K. Toomey, 230 East 72nd Street, for years a diligent canvasser and circulator of petitions for Marcantonio.”
The jury returned a verdict awarding to plaintiff Stella $10,000 compensatory damages and $7,500 punitive damages and awarding plaintiff Toomey six cents compensatory damages and $7,500 punitive damages. On appeal, the Appellate Division reversed and ordered a new trial unless the plaintiffs consented to a reduction of their verdicts to $5,000 punitive damages for Toomey and to $5,000 compensatory and $5,000 punitive *78 damages for Stella. Both plaintiffs elected to take the reduction, and filed the necessary stipulations and consents, upon which the Appellate Division ordered that the judgment appealed from be modified and as so modified affirmed.
Defendants appeal to this court from that part of the final judgment of modification as awards plaintiff damages against them. The plaintiffs cross-appeal from the judgment of modification to the extent that it reduces the amount of their recovery against defendants.
It is the defendants’ contention that: (1) The publications complained of were not libelous, but were fair comment concerning political facts admittedly true; (2) the alleged cause of action as against Donovan is barred by the Statute of Limitations, and the trial court erred in failing to dismiss as a matter of law upon the facts conclusively established at the trial; (3) defendant Farley was not represented by counsel when the jury was impaneled and was improperly deprived of the right to participate in the selection of the jury; (4) defendants were irreparably prejudiced by the admission into evidence of a substantial amount of recurring testimony concerning the religious faith and observances of the plaintiffs and of one of their principal witnesses and that the trial court aggravated the damage by his remarks concerning this prejudicially irrelevant testimony; (5) the award of punitive damages in favor of plaintiff Toomey is insupportable inasmuch as by its award of nominal compensatory damages the jury found that plaintiff Toomey suffered no actual damage, and (6) the plaintiff Stella also failed to meet the necessary standard of proof in relation to actual injury, financial or otherwise.
We all agree that to charge one with being a Communist or with having communist affiliations and sympathies is defamatory, justifying an action for libel (see Mencher v. Chesley, 297 N. Y. 94), and we all further agree, on the basis of the evidence, that the jury could properly conclude, as it did, that the statements made by defendants of plaintiffs were libelous. The defense of fair comment is not available to one who makes 'false statements or unjustifiable inferences. The qualified privilege that protects a person in making any fair and honest criticism of the conduct of a public officer or one seeking public office “ extends to a fair and honest statement of actual facts relating to public acts and to reasonable and justifiable comment thereon *79 and criticism thereof. It does not extend to attacks upon private character or to publishing defamatory things about an official even if the writer in good faith makes the publication believing his statements are true, neither does it permit a person to draw conclusions that are or that the jury may find are improper and unjustifiable.” (Bingham v. Gaynor, 203 N. Y. 27, 32-33.)
Moreover, we are in agreement in the following respects: (a) The plaintiffs’ cause of action against defendant James Gr. Donovan is barred by the one-year libel Statute of Limitations (Civ. Prac. Act, § 51, subd. 3) and must, therefore, be dismissed. The first copies of the “Yorkville Democrat” containing the alleged defamatory statements were distributed on August 17, 1951. Suit was commenced as against him on August 19, 1952, more than one year thereafter, and, under the rule in Gregoire v. G. P. Putnam’s Sons (298 N. Y. 119) — which we hold to be applicable here — the time for commencing suit began to run as of August 17th. (b) Plaintiffs’ cross appeal from the judgment of modification, to the extent that it reduced the amount of plaintiffs’ recovery, must be dismissed since plaintiffs consented to such reduction (see Dudley v. Perkins, 235 N. Y. 448).
The remaining question is as to whether defendants, J ames J. Farley, James J. Farley Association, Inc., and Lawrence P. Cuccia should be granted new trials upon the grounds: (1) That Farley was not represented by counsel when the jury was impaneled; (2) that the foregoing-named defendants were prejudiced by the admission into evidence of testimony concerning the religious faith and observances of the plaintiffs and of one of their principal witnesses and that the trial court aggravated the damage by his remarks concerning such testimony, and (3) that the damages awarded plaintiffs, even as reduced by the Appellate Division, are excessive and unauthorized in law.
We conclude that new trials are not warranted.
As to (1): Defendant Farley was represented at the trial of this action by his codefendant, Donovan. Mr. Donovan, as a defendant, was represented at the trial by Richard E. Bauman, who was Mr. Donovan’s secretary and office associate. When the case appeared on the Ready Day Calendar at Trial Term, Part II, of the Supreme Court, New York County, on January 17, 1955, at about 10:30 in the morning, Mr. Justice McNally, who was presiding, queried counsel as to whether they were *80 actually ready and Mr. Bauman answered that they were. Mr. Justice McNally then assigned the ease to Trial Term, Part XIY. On appearing at Trial Term, Part XIY, Mr. Bauman advised the court (Mr. Justice Steuer.) that Mr. Donovan was' not immediately available but that he would undertake to reach him. Mr. Feldman, counsel for the plaintiffs, then inquired as to what the procedure would be if Mr. Bauman were unsuccessful, and Mr. Bauman responded that he would select the jury in behalf of Mr. Donovan in the event Mr. Donovan could not attend. Mr. Justice Steuer then adjourned the selection of the jury until 2:00 o’clock of that afternoon in order to give Mr. Donovan the opportunity to appear. Mr. Donovan did not appear at 2:00 o’clock inasmuch as he had gone to Washington. Upon the opening of the trial the following morning, January 18, 1955, Mr. Donovan told the Trial Judge that he had not been informed the preceding day that the action would then come to trial, so that he had not learned in time of the Trial Judge’s instruction to impanel the jury.
Defendant Farley urges that he was thus not represented by counsel when the jury was impaneled and that he was thereby improperly deprived of the right to participate in the selection of the jury.
It seems to us that that contention is untenable. When the case appeared on the Beady Calendar, Bauman, Donovan’s own attorney and associate, announced that the defendants were ready. When the case came before the assigned Trial Term, Bauman announced that he would select the jury on behalf of Donovan if Donovan were not available to perform that function. Under all of the circumstances, we think it was reasonable for Trial Term to assume that Bauman was acting authorizedly when he answered the Beady Calendar on behalf of his associate Donovan and when he thereafter impaneled the jury on behalf of Donovan, and that Trial Term, in proceeding with the impaneling, was exercising sound discretion. The record is barren of evidence to the effect that Bauman lacked authority, as he represented by his conduct, to answer the Beady Calendar on behalf of Donovan or impanel the jury on behalf of Donovan. At the opening of the trial on the next day, the following colloquy took place:
“ Mr. Donovan: As attorney for the defendants, James J. Farley and Arthur Simpson, I wish to make the following state *81 ment and object at this point. This case appeared yesterday-morning for the first time on the ready calendar at Trial Term, Part II.
‘ ‘ In my experience this is the first time I ever heard of a case being sent out for trial as a ready case on the first day of its call.
‘ ‘ I did not know it was going on for trial yesterday morning and made preparations to go to Washington. I was actually on my way to Washington yesterday afternoon when I learned it was sent out for the purpose of having a jury selected.
“ I was prevented, as a result of these circumstances, from being present when the jury was picked. I therefore object and take an exception because I was not given a chance to select the jury.
“ The Court: The record should state that the case was sent to the Part about half past 10:00 and there was present Mr. Bauman, and the Court advised Mr. Bauman that upon being apprised that there were certain attorneys for the defendants not present, the selection of the jury would be put over until 2:00 to give all attorneys, an opportunity to be present. Mr. Bauman undertook to advise counsel in the case to that effect. # * *”
It should be noted that Mr. Donovan did not declare that Mr. Bauman did not have from him the authority which Mr. Bauman had represented to the court that he possessed. It should likewise be noted that Mr. Bauman did not endeavor to come to Mr. Donovan’s aid by stating that he had lacked the authority to do what he had done on behalf of his office associate. Moreover, Mr. Donovan did not move that a new jury be impaneled or that he be given permission to question the members of the jury which had been impaneled in his absence. He was content to state that he objected and took an exception.
We think it manifest that a Justice would be unable to manage a calendar part in which he was expected to send out cases for trial to other parts, unless he were permitted to accept statements and conduct of counsel, such as that made by Bauman, Donovan’s associate, as true. Here, the truth of Bauman’s statements to and conduct before Justices McNally and Steuer, upon which they acted, is established beyond all doubt by (1) Donovan’s failure to state that he had not given Bauman authority to act for him, and (2) the absence of a statement *82 by Bauman tbat bis statements and conduct were misrepresentations.
As to (2): In all but tbe rarest of cases, tbe religious faitb and observances of a party are matters entirely irrelevant to tbe issue presented, and tbeir injection into a trial is improper and constitutes reversible error (see, e.g., People v. Castellano, 273 App. Div. 978; Saunders v. Champlain Bus Corp., 263 App. Div. 683, 684; Bowen v. Mahoney Coal Corp., 256 App. Div. 485). Tbis, however, is tbat rare case in wbicb proof of plaintiffs’ piety and devotion to tbe tenets of tbeir religion and of tbeir prominence and activity in tbeir cburcb was competent and pertinent “ to show tbe circumstances surrounding tbe plaintiff, and as bearing upon tbe hurtful tendency of tbe libel, and tbe general damage to wbicb be was exposed.” (Morey v. Morning Journal Assn., 123 N. Y. 207, 210; see, also, Parrish v. Sun Print. & Pub. Assn., 6 App. Div. 585, 587; Bishop v. New York Times Co., 233 N. Y. 446, 460.) Particularly as to public figures like plaintiffs, charges of secret attachment to tbe communist cause while they were actively participating in tbe affairs of tbeir cburcb would paint them as hypocrites and thus expose them to public odium (see Sweeney v. Schenectady Union Pub. Co., 122 F. 2d 288, 290, affd. 316 U. S. 642). Since evidence of tbat kind was admissible for tbe purposes stated, prolonged examination of tbe subject, although perhaps distasteful and uncalled for, was discretionary with tbe Trial Judge and we cannot say tbat tbe introduction of such evidence improperly influenced tbe verdict or constituted such an abuse of discretion as to require a reversal. None of tbe cases cited by defendants in tbeir brief suggest a contrary result. They concern situations where tbe question of religion could not conceivably have any bearing on tbe issues therein involved, i.e., personal injury, wrongful death and nuisance actions. Here, as mentioned above, it has a bearing. It is true tbat when tbe first objection was made to tbe introduction of such testimony, tbe Trial Judge stated tbat be was allowing it on tbe theory tbat tbe official position of tbe cburcb of wbicb plaintiffs are members is opposed to communism, tbat is, be was admitting it as proof of tbe fact tbat plaintiffs were not Communists — a fact conceded by defendants. However, when tbe defendants persisted in tbeir objection to such testimony, tbe Trial Judge properly said: “ It has a bearing on tbe question of damages.”
*83 In this connection it should he stated that we are all in agreement that all churches in America affiliated with or belonging to recognized religious groups are opposed to communism. That is naturally so since communism is atheistic. No church may survive under it. Obviously, therefore, the rule which we here announce is applicable to members of all churches.
As to (3): Many years ago it was aptly said that: “ A person may be of such high character that the grossest libel would damage him none; but that would be no reason for withdrawing his case from the wholesome, if not necessary, rule in respect of punitive damages.” (Prince v. Brooklyn Daily Eagle, 16 Misc. 186, 190.) And, more recently, it was written that to adopt the view that punitive damages are dependent upon, and must bear relationship to the allowance of actual damages, ‘ ‘ would mean that a defamer gains a measure of immunity no matter how venomous or malicious his attack simply because of the excellent reputation of the defamed; it would mean that the defamer, motivated by actual malice, becomes the beneficiary of that unassailable reputation and so escapes punishment. It would require punitive damages to be determined in inverse ratio to the reputation of the one defamed. The doctrine advanced by the defendants would nullify one of the underlying objectives of punitive damages and has consistently been rejected by New York and federal authorities, although recognized in a few states. * * * Punitive or exemplary damages are intended to act as a deterrent upon the libelor so that he will not repeat the offense, and to serve as a warning to others. They are intended as punishment for gross misbehavior for the good of the public and have been referred to as ‘ a sort of hybrid between a display of ethical indignation and the imposition of a criminal fine.’ Punitive damages are allowed on the ground of public policy and not because the plaintiff has suffered any monetary damages for which he is entitled to reimbursement; the award goes to him simply because it is assessed in his particular suit. The damages may be considered expressive of the community attitude towards one who wilfully and wantonly causes hurt or injury to another.” (Reynolds v. Pegler, 123 F. Supp. 36, 38, affd. 223 F. 2d 429, cert. denied 350 U. S. 846.) To those views we subscribe. The question of the amount of compensatory and/or punitive damages to be awarded was a matter for the jury. There is nothing in the record to *84 lead us to conclude that in resolving that issue they were motivated by passion or prejudice and we cannot say that the amount of damages awarded the plaintiffs does not have support in the record or is excessive as a matter o'f law.
The judgment should be modified in accordance with the opinion herein and, as so modified, affirmed.