John ZUCK, Plaintiff-Appellant,

v.

INTERSTATE PUBLISHING CORP., Defendant-Appellee.

John ZUCK, Plaintiff-Appellant,

v.

Marjorie BAIR, Edward Purcell, Martin Goodman and Jean Goodman, Defendants-Appellees.

No. 196, Docket 27661.

United States Court of Appeals Second Circuit.

Argued Jan. 15, 1963.

Decided May 10, 1963.

Baker, Garber & Chazen, Hoboken, N. J. (Nathan Baker, Bernard Chazen, Hoboken, N. J., of counsel), for plaintiff-appellant.

Henry Edward Schultz, New York City (Michael E. Schultz, New York City, of counsel), for defendants-appellees.

Before MEDINA, WATERMAN and MOORE, Circuit Judges.

**WATERMAN**, Circuit Judge.

The primary issue in these appeals is the time at which a cause of action for libel accrues, for purposes of the statute of limitations, under the New York "single publication rule".

Appellant, John Zuck, brought these consolidated actions against Interstate Publishing Corp., publisher of the magazine "Movie World", and several individuals connected with Interstate,[1] alleging that he was libeled by an article published in an issue of "Movie World" dated March 1961. The actions were commenced in the United States District Court for the Southern District of New York on December 22, 1961; jurisdiction was based upon a diversity of citizenship.[2]

Before trial, defendants moved for summary judgment, Rule 56, Fed.R.Civ. P., setting up the defense of the statute of limitations. In support of their motions they filed affidavits, not contested by appellant, asserting that the March 1961 issue of "Movie World" was printed by Art Color Printing Company at Dunellen, New Jersey, and that all copies of the issue were delivered by Art Color to the exclusive distributor of that magazine (Independent News Company) or to carriers designated by it, on or before December 15, 1960. Thereafter, defendants asserted, the magazines were delivered to news dealers throughout the United States and were placed on newsstands for sale to the public beginning December 22, 1960.

On the basis of these facts the district judge granted defendants' motion for summary judgment, holding that plaintiff's cause of action was barred under both New York's and New Jersey's one year statutes of limitations. N.Y.Civil Practice Act § 51-a; N.J.S.A. 2A:14-3. He ruled that under the New York single

---

1. The individual defendants in Action No. 61–4573 are Marjorie Bair, editor of "Movie World"; Martin and Jean Goodman, the principal stockholders, officers and directors of Interstate Publishing Corporation; and Edward Purcell, writer of the allegedly libelous article. Purcell was not served and has not appeared in this action.

2. Plaintiff is a citizen of New Jersey. Interstate is a New York corporation and the individual defendants are all citizens of New York.

publication rule, Gregoire v. G. P. Putnam's Sons, 298 N.Y. 119, 81 N.E.2d 45 (1948), plaintiff's sole cause of action arose when all copies of the magazine were delivered to the wholesale distributor or placed on common carriers for shipment to news dealers—in this instance more than one year prior to the commencement of these proceedings.

Zuck appeals, claiming that if his cause of action is controlled by New York substantive law, it accrued on December 22, 1960, when the bulk of the allegedly libelous magazines were placed on sale to the public.[3] He maintains, however, that his cause of action arose in New Jersey and that it is not time barred under New Jersey law.[4] We hold with the appellant and reverse and remand the cause for further proceedings below.

Traditionally, libel consists in the unprivileged communication of defamatory material to a person other than the defamed. Each such communication constitutes a publication and each publication gives rise to a separate cause of action. Duke of Brunswick v. Harmer, 14 Q.B. 185, 117 Eng.Rep. 75 (1849); Restatement, Torts, § 578, comment b (1938); Odgers, Libel and Slander 132, 493 (6th ed. 1929). These traditional principles, however, antedate mass publication and nationwide distribution of printed information by our modern processes. When applied to a contemporary magazine of wide circulation, for example, they create the possibility that a single defamatory statement will give rise to millions of causes of action, one for each person who reads the offending periodical.

Recognizing the difficulties of pleading and the opportunities for harassment of defendants which a literal application of these principles would create, the New York courts ruled, before the turn of this century, that a person aggrieved by defamatory matter appearing in a newspaper was allowed but one suit in which to recover for all publications made by the defendant up to the time the action was commenced. Galligan v. Sun Printing & Publishing Ass'n, 25 Misc. 355, 54 N.Y.S. 471 (1898); Enos v. Enos, 135 N.Y. 609, 32 N.E. 123 (1892). The plaintiff in such a suit was permitted to make a single count allegation that the defamatory matter had been printed and extensively circulated. See, e. g., Fried, Mendelson & Co. v. Edmund Halstead, Ltd., 203 App.Div. 113, 196 N.Y.S. 285 (1922); Johnston v. Macfadden Newspapers Corp., 238 App.Div. 68, 263 N.Y.S. 561 (1933).

■ These early rules of pleading and compulsory joinder, however, did not prevent further actions for republication of the defamatory matter after the commencement of the original suit. Galligan v. Sun Printing & Publ. Ass'n, supra. Despite New York's short statute of limitations for libel actions, therefore, the publisher of a widely-distributed newspaper periodical, or book, remained liable to suit so long as any copies of the offending matter remained in circulation. To eliminate this possibility of commencement of further actions, which possibility was thought to subvert the policy of New York's statute of limitations, the New York court, in Wolfson v. Syracuse Newspapers, Inc., 254 App.Div. 211, 4 N.Y.S.2d 640 (1938), aff'd, 279 N.Y. 716, 18 N.E.2d 676 (1939), created the single publication rule. Under this rule the publication of a single edition of a libelous newspaper or periodical gives rise to but one cause of action, after the accrual of which subsequent distributions may increase plaintiff's compensable damages

---

3. In computing the time of the running of the statute of limitations under New York law, the day of publication is excluded. Gen.Construction Law § 20, Tismer v. New York Edison Co., 228 N.Y. 156, 126 N.E. 729 (1920).

4. Under § 13 of the New York Civil Practice Act, a cause of action arising outside New York may not be commenced in the courts of that state either if it is barred under the statute of limitations of the state where it arose, or if it would be barred by the New York statute had it arisen in New York. We proceed first, therefore, to determine the issue under New York law.

but do not create independent causes of action or start the statute of limitations running anew. The accrual of this single cause of action is said to occur upon the "publication" of the offending matter. In Wolfson, however, the term "publication" no longer referred to *any* unprivileged communication of the defamatory matter to a third person, but was employed in a different, and not wholly specified manner:

> "The number of separate publications of the alleged libels and the causes of action arising therefrom in plaintiff's favor [are] not gauged by the number of copies of the single edition in which the articles appeared and which defendant circulated by sale or otherwise. ' * * * [I]n the publication of a defamatory article in a newspaper publicly circulated there is but one publication, and that at the place where the newspaper is published.' " 4 N.Y.S. 2d at 642.

For purposes of the single publication rule, some dispute remains as to precisely what stage in the preparation and distribution of a periodical the moment of legal publication occurs. The leading New York case is Gregoire v. G. P. Putnam's Sons, 298 N.Y. 119, 81 N.E.2d 45 (1948). There the Court of Appeals extended the rule to bar an action for libelous matter contained in a book, several copies of which were sold more than five years after the initial printing and distribution of the edition. The court stated:

> "Although it may not be said that the publication and dissemination of books has reached that degree of mass production and widespread distribution now prevalent in fields invaded by newspapers and periodicals, it is our view that the publication of a libelous book, involving styling, printing, binding and those other acts which enable a publisher on a given date to release to the public thousands of copies of a single printing or impression, affords the one libeled a legal basis for only one cause of action *which arises when the*

> *finished product is released by the publisher for sale in accord with trade practice.*" 298 N.Y. at 126, 81 N.E.2d at 49 (emphasis supplied).

Though the language is not without ambiguity, it suggests that the date of legal publication is to be the official "release" or "on sale" date, which in this case was December 22, 1960, rather than the earlier point in the distribution process which the court below selected. The "Gregoire test" appears to have been so interpreted by Judge Hincks when he sat on the United States District Court for the District of Connecticut. Fouts v. Fawcett Publ., Inc., 116 F.Supp. 535 (D. Conn.1953) ; Hazlitt v. Fawcett Publ., Inc., 116 F.Supp. 538 (D.Conn.1953).

In recent years, however, the lower courts of New York have given conflicting interpretations of Gregoire. In National Cancer Hospital of America v. Confidential, Inc., 151 N.Y.S.2d 443, 444–445 (Sup.Ct.1956), Justice Nathan ruled that

> "A libel is deemed to be published as soon as the manuscript has passed out of defendant's possession, and it is settled law that a cause of action for libel accrues on the day of its first publication. * * *
>
> "Possession and control by defendant Confidential, Inc. terminated when its printer released and shipped finished magazines by mass distribution to the wholesale newsdealers."

In Stella v. James J. Farley Ass'n, 204 Misc. 998, 122 N.Y.S.2d 322 (1953), aff'd, 284 App.Div. 873, 135 N.Y.S.2d 234 (1954), by contrast, Justice Levy ruled that an action for libel was not time-barred when commenced within one year of the receipt by the public of the offending political newspaper:

> " * * * I hold that the date of 'publication' within the meaning of the 'one publication rule' is not the date its contents were dictated to a stenographer in preparation for the printing of the paper, nor the date of the transcribing of her notes, nor

the date when the article was print- ed, nor the date when it was read by persons engaged in inserting the copies of the paper in pre-addressed envelopes for mailing to those for whom the paper was published, nor the date of delivery to one who himself receives the material for purposes of mail distribution. If a plaintiff claiming to be libelled by the publication of a newspaper is to be limited to a single cause of action based upon a single date of publication—and subsequent issuance is not to give rise to a new cause of action—that date should in my view be the date when the newspaper is received by the general public, regardless of the fact that various persons may have read the libel as an incident to the preparation and printing of the paper and its distribution to desired readers." 122 N.Y.S.2d at 330.

█ As the New York Court of Appeals has not yet resolved the conflicting interpretations of its Gregoire test of accrual, we are required to apply to the facts before us the interpretation which we believe that court would make in light of the state policies underlying the single publication rule. See West v. American Tel. & Tel. Co., 311 U.S. 223, 236–237, 61 S.Ct. 179, 85 L.Ed. 139 (1940); Bernhardt v. Polygraphic Co., 350 U.S. 198, 204–205, 76 S.Ct. 273, 100 L.Ed. 199 (1955); Merritt-Chapman & Scott Corporation v. Public Utility District No. 2, 319 F.2d 94 (2 Cir., 1963).

In most cases, of course, the precise stage in the actual publication and distribution process at which legal publication occurs is a matter of no consequence. Alternative dates for the fixing of the time of accrual of the cause of action for libel will normally fall within a few days or weeks of each other. As the time interval between the suggested alternative accrual dates increases, however, it becomes clear that the later the time of accrual the fairer the operation of the single publication rule.

In New York, as in most other jurisdictions, the statute of limitations for libel actions is unusually short.[5] To fix as the date of legal publication even the time that the offending matter is placed on sale to the public may create a trap for unwary plaintiffs; magazines are often post-dated several weeks or months after the actual date they are placed on sale to the public.[6] To fix the accrual date *prior* to receipt by the public of the libelous material, however, is normally to begin the running of the statute of limitations before the time that the offending publication has been brought to the victim's attention, and, indeed, prior to the occurrence of any harm to his reputation. The result, thus, is an effective shortening of an already short limitation period. Moreover, under the single publication rule, victims of mass publication libel are given but one action in which to recover for all harm produced by a single edition of a newspaper, magazine, or book. The earlier that sole cause of action must be commenced, the greater the likelihood of post-judgment distributions of the offending material for which the victim is denied any relief whatever.[7]

---

5. The applicable limitation period in actions for libel and slander is one year in nearly two-thirds of American jurisdictions. Angoff, Handbook of Libel 25 (1946).

6. The effectiveness of the trap thus created may be seen in many cases where a suit, commenced within the statutory limit for the date printed on an allegedly libelous magazine, was nonetheless held to be time barred under the applicable statute of limitations. E. g., Winrod v. McFadden Publications, 62 F.Supp. 249 (N. D.Ill.1945), aff'd, 187 F.2d 180 (7 Cir., 1951), cert. denied, 342 U.S. 814, 72 S.

Ct. 28, 96 L.Ed. 616; Means v. MacFadden Publications, 25 F.Supp. 993 (S. D.N.Y.1939); Cannon v. Time, Inc., 39 F.Supp. 660 (S.D.N.Y.1939); Backus v. Look, Inc., 39 F.Supp. 662 (S.D.N.Y. 1941); McGlue v. Weekly Publications, Inc., 63 F.Supp. 744 (D.Mass.1946). And see generally, Stella v. James J. Farley Ass'n, 204 Misc. 998, 122 N.Y.S.2d 322 (1953), aff'd, 284 App.Div. 873, 135 N. Y.S.2d 234 (1954).

7. Several writers envision the possibility that a scheming publisher could bring a large edition of a libelous book or other printed matter to the point of starting

Appellees maintain that in the law of libel "publication" is a word of art which is not subject to redefinition in the interests of the policy considerations relied upon by Justice Levy in Stella v. James J. Farley Ass'n, supra. They argue that the *first* publication of a libel (under traditional principles) constitutes the *sole* publication for purposes of the single publication rule, and that such a publication normally occurs, in cases like the present one, prior to the "on sale" date of the periodical. Because of the decision in Ostrowe v. Lee, 256 N.Y. 36, 175 N.E. 505 (1931), and comments by text writers to the effect that unprivileged communications of the libelous contents of a periodical may occur upon the dictation of an article to the author's secretary; during the editing process, Lansdale-Ruthaven, Law of Libel for Journalists 38 (1934); or upon delivery of the manuscript to the printer, Hale, Law of the Press 148 (3d ed. 1948); they argue that the first publication (under traditional rules) will normally occur prior to the "on sale" date of the finished product. Such was the situation in Stella v. James J. Farley Ass'n, supra, where the material for the offending political newspaper was written by August 11, 1951, typewritten by August 14, delivered to the printer on August 14, and set in type from which proof was run off by August 16, 1951. Nevertheless, the New York Court of Appeals subsequently held in Toomey v. Farley, 2 N.Y. 2d 71, 156 N.Y.S.2d 840, 845, 138 N.E.2d 221 (1956) (defendants' appeal from adverse judgment on the merits) that the paper was "published" for purposes of the Gregoire test of accrual, on August 17, 1951. On that date, according to the findings of the lower court (122 N.Y.S.2d 322, 328) 15,000 copies of the paper were inserted in envelopes and mailed by various members of the defendant political association, and "[h]undreds upon hundreds of copies" were "dropped in stores and passed around on the street corners."

If it is clear that the first technical publication of a libelous periodical will ordinarily occur prior to the "on sale" date, it is equally clear that such a publication (under traditional rules) will ordinarily occur prior to the delivery of the periodical to independent distributors or common carriers. Both suggested interpretations of the Gregoire test, therefore, involve a modification of traditional publication concepts. Both require that communications of the libel which occurred either prior or subsequent to the Gregoire publication date be "engrossed" into the single publication which is said to give rise to plaintiff's sole cause of action under the New York rule. Cf. Hartmann v. Time, Inc., 166 F.2d 127, 1 A.L.R.2d 370 (3 Cir., 1948), cert. denied, 344 U.S. 838,[8] 68 S. Ct. 1495, 92 L.Ed. 1763.

Rather than emphasizing the *first* publication under traditional rules, however, the test of accrual relied upon below and in National Cancer Hospital of America v. Confidential, Inc., supra, turns upon the publisher's loss of possession and control over the finished product which is said to occur upon delivery of the product to independent distributors. The significance of this event for purposes of fixing the legal time of publication is not entirely clear.

The fact that such a delivery, without more, was held to constitute a publication even under *traditional* rules, dates from early New York decisions concerned, apparently, with establishing the liability of newspaper publishers when the only ascertainable sales or communica-

the statute of limitations running, then proceed, when the one-year period had run, to flood the market with defamatory matter. See Note, 34 Cornell L.Q. 453, 458 (1949); 2 Vand.L.Rev. 142, 144 (1948); 62 Harv.L.Rev. 1041, 1043 (1949); Leflar, The Single Publication Rule, 25 Rocky Mt.L.Rev. 263, 275 (1952–53).

8. We assume that if the publication were to terminate abortively prior to the time of legal publication under the Gregoire test, the New York courts would allow an action based upon prior communications which were harmful to the victim's reputation. See Note, 62 Harv.L.Rev. 1041, 1042 n. 16 (1949).

tions of the objectionable matter in suit were made by independent distributors. See, e. g., Youmens v. Smith, 153 N.Y. 214, 47 N.E. 265 (1897). The need for a doctrine of constructive publication disappeared when it became established that a publisher (in the trade sense) could be held jointly liable with distributors, irrespective of agency relationships, for the ultimate sale of libelous material.[9] The constructive publication doctrine survived, however, and provided the conceptual framework for a precursor, in New York law, to the single publication rule:

> "It has been asserted that, after the edition of the newspaper is put on sale and the publisher loses all control over the circulation, it would be unreasonable and illogical to hold that the selling of a single copy of that edition at a time subsequent to the date of the printing and distribution of the edition without a new and affirmative act of the publisher or his agent to effect the sale would constitute a new publication. In that case, it is said, the later sale would be the natural and probable result of the original publication. Schoepflin v. Coffey, 162 N.Y. 12, 56 N.E. 502." Wolfson v. Syracuse Newspapers, Inc., 279 N.Y. 716, 18 N.E.2d 676, 678 (1939) (dissenting opinion).

New York's single publication rule as laid down in Wolfson and Gregoire v. G. P. Putnam's Sons, supra, however, constitutes no mere modification of agency principles in New York jurisprudence. In both cases the application of the rule was held to cut off or "to engross" causes of action for distributions *made by the publisher itself* after the date of original "publication." To fix the time of delivery to independent distributors as the time of legal publication under the rule, therefore, would be to burden the rule with a conceptual scheme foreign to its rationale.

We hold that under the New York single publication rule appellant's cause of action accrued no earlier than December 22, 1960, the date on which the March 1961 issue of "Movie World" went on sale to the public at newsstands throughout the United States.

Both parties to this appeal raise the suggestion that because of the interstate character of the alleged libel in suit, plaintiff's action is controlled by § 13 rather than § 51–a of the New York Civil Practice Act. Section 13 provides, in material part, that

> "Where a cause of action arises outside of this state, an action cannot be brought in a court of this state to enforce such cause of action after the expiration of the time limited by the laws either of this state or of the state or country where the cause of action arose * * *."

The application of this provision in the context of interstate libel raises conflict of laws problems "of almost incredible complexity." 1 Harper and James, Torts § 5.16 (1956); Prosser, Interstate Publication, 51 Mich.L.Rev. 959 (1953), and counsel in their briefs have cast no light upon the problem. Plaintiff has alleged nationwide distribution of the March 1961 issue of "Movie World." Were his complaint to be interpreted by traditional libel principles, it would state multiple causes of action (one for each sale of the offending material) many of which would be alleged to have arisen outside of New York State. Of course, under New York's single publication rule, multiple distributions give rise to but one cause of action. Whether the rule applies only to distributions in New York, cf. Hartmann v. Time, Inc., 166 F.2d 127, 1 A.L.R.2d 370 (3 Cir., 1948), cert. denied, 334 U.S. 838, 68 S.Ct. 1495, 92 L.Ed. 1763, or applies across state lines to create one cause of action for all publications wherever made, cf. Tocco v. Time, Inc., 195 F.Supp. 410 (E.D.Mich. 1961), is a question not yet considered

---

**9.** "One is liable for the publication of defamation by a third person whom as his servant, agent, or otherwise, he directs or procures to publish defamatory matter." Restatement, Torts § 577, Comment **f** (1938).

by the New York courts. See Barry v. Beacon Publications Corp., 169 F.Supp. 439, 441 (S.D.N.Y.1958). The New York decisions are equally mute, consequently, as to where such a single cause of action, if created by the New York rule, would be said to arise, or, pursuant to New York conflict of laws doctrine, under what jurisdiction's law it would be governed.[10]

Logically, each of these questions demands an answer prior to any systematic determination whether appellant's entire action, or any part of it, is time-barred under § 13 of the Civil Practice Act. At the present stage of this litigation, however, we are required to make only the following determinations:

A. We assume, as have most courts and commentators who have considered the issue, that practical necessity dictates that ordinarily an action for interstate libel be tried under the substantive law of one, rather than fifty-one, jurisdictions. See, e. g., Mattox v. News Syndicate Co., Inc., 176 F.2d 897, 900, 12 A.L.R.2d 988 (2 Cir., 1949) cert. denied, 338 U.S. 858, 70 S.Ct. 100, 94 L.Ed. 525; Kelly v. Loew's, Inc., 76 F.Supp. 473, 482 (D.Mass.1948); Dale System v. Time, Inc., 116 F.Supp. 527 (D.Conn.1953); Palmisano v. News Syndicate, 130 F. Supp. 17 (S.D.N.Y.1955); Prosser, Interstate Publication, 51 Mich.L.Rev. 959 (1953); Note, 61 Harv.L.Rev. 1460 (1948); Note 16 U.Chi.L.Rev. 164 (1949).[11]

B. Whatever choice-of-law test New York may ultimately choose to govern actions of this kind,[12] it appears, on the

---

10. Our research reveals but one New York decision in which an action for mass publication libel has not been assumed, without discussion, to be controlled by New York substantive law. Compare Ginsburg v. Hearst Publication Company, Inc., 5 A.D.2d 200, 170 N.Y.S.2d 691 (1958) with, e. g., Hartmann v. Time, Inc., 60 N.Y.S.2d 209 (Sup.Ct.1945), aff'd, 271 App.Div. 781, 66 N.Y.S.2d 151 (1946); Campbell-Johnston v. Liberty Magazine, Inc., 64 N.Y.S.2d 659 (Sup.Ct.1945), aff'd, 270 App.Div. 894, 62 N.Y.S.2d 581 (1946); National Cancer Hospital of America v. Confidential, Inc., 151 N.Y.S. 2d 443 (Sup.Ct.1956); Toomey v. Farley, 2 N.Y.2d 71, 156 N.Y.S.2d 840, 138 N.E. 2d 221 (1956). In Ginsburg, the Appellate Division affirmed the discretionary dismissal of plaintiff's action on grounds of *forum non conveniens*, where neither plaintiff nor defendants were New York residents and no special allegation of publication in New York was made. Upon these authorities, however, we are unwilling to assume that it is, or constitutionally could be, the New York choice of law rule that all actions for multi-state libel are to be controlled by the law of the forum, however limited the forum's contacts with the matter in dispute. Cf. Mattox v. News Syndicate Co., Inc., 176 F.2d 897, 905, 12 A.L.R.2d 988 (2 Cir., 1949) (On petition for rehearing); Nagoya Associates, Inc. v. Esquire, Inc., 191 F.Supp. 379, 382 (S.D.N.Y.1961).

11. Although the Restatement of the Law, Second, Conflict of Laws, Tentative Draft No. 8, § 379e is in accord, Comment c provides that "it is possible that [where the plaintiff is alleged to have suffered special damages in two or more states] the local law of each of these states will be applied to determine the plaintiff's right to recover for the special damage he is alleged to have suffered within its territory.

12. A variety of solutions as to choice of law in multistate libel actions have been advanced by law review writers. Such cases, it has been suggested, should be governed by the law of:
(a) the place of emanation, or where defendant's physical acts originating the alleged defamation occurred;
(b) the state of the publisher's domicile or incorporation;
(c) the state where the defendant's main publishing office is located;
(d) the state of the plaintiff's domicile, on the assumption that the major harm to plaintiff's reputation was centered there;
(e) the state where the plaintiff actually suffered the greatest harm to his reputation;
(f) the state of plaintiff's principal activity to which the alleged defamation relates;
(g) the place of principal circulation;
(h) the state where the dafamatory statement was first communicated to any third person; or
(i) the forum.
See *Leflar, Choice of Law; Torts: Current Trends*, 6 Vand.L.Rev. (1953); Note, 28 N.Y.U.L.Rev. 1006, 1010 (1953); Note, 60 Harv.L.Rev. 941 (1947); Palmisano v. News Syndicate Co., Inc., 130

facts of the limited record before us, that only New York and New Jersey have sufficient contacts with the matter in dispute to warrant selection as the source of governing law for appellant's cause of action.[13]

C. If New York law, on intra-mural substantive and procedural questions alike, controls, appellant's action, as we have heretofore determined, is not time-barred under § 51–a of New York's Civil Practice Act.

■ D. If appellant's action is governed by New Jersey law, the date of its accrual, we assume, is also determined by the law of that jurisdiction. Nevertheless, even granting this result, the action would be barred under the first clause of the New York Civil Practice Act, § 13, if, had it arisen from acts performed solely within New York, it would have been barred under New York's single publication rule and § 51–a of the New York Civil Practice Act. Cassius v. Mortimer, 161 F.Supp. 74 (S.D.N.Y.1957), aff'd, 252 F.2d 959 (2 Cir., 1958); Association for the Preservation of Freedom of Choice, Inc. v. Simon, 299 F.2d 212 (2 Cir., 1962); Barry v. Beacon Publications Corp., 169 F.Supp. 439, 441 (S.D. N.Y.1958) (on motion for reargument).[14] As we have heretofore determined, however, appellant's action would not have been so barred.

■ E. If, finally, plaintiff's cause of action be governed by New Jersey law, we hold, in the absence of New Jersey decisions on the issue, that it accrued not earlier than December 22, 1960, and that it is not, therefore, barred under the second clause of the New York Civil Practice Act, § 13.

The judgment of the district court is reversed and the cause is remanded for further proceedings consistent with this opinion.

MEDINA, Circuit Judge (concurring).

I concur in the result and agree that, on the facts before us, the New York cases referred to in the majority opinion justify the conclusion that under New York law a cause of action under New York's single publication rule would accrue on the date when the March, 1961 issue of "Movie World" first appeared on the newsstands for sale to the public, rather than on the date of shipment by common carrier to wholesale distributors. On this basis, and without further comment, I would remand the case for further proceedings. It was error to grant summary judgment dismissing the complaint.

MOORE, Circuit Judge.

I also concur with the opinion of Judge MEDINA.

F.Supp. 17 (S.D.N.Y.1955); Restatement 2d, Conflict of Laws, Tentative Draft No. 8, § 379e.

13. From the record it appears that the editorial preparation of the March 1961 issue of "Movie World" was performed in New York, where Interstate is incorporated and the defendants reside. The magazine was printed and first released to distributors in New Jersey, where plaintiff resides and may be assumed, without more, to enjoy his principal reputation. The publication was sold, of course, in both New York and New Jersey, as well as in other states throughout the nation.

14. As we interpret the prior decisions of this court in Cassius and Simon, therefore, an action for multistate libel, wherever it has arisen and under whatever law it is governed, will be barred in the courts of New York if, had the acts complained of occurred solely in New York, the plaintiff's cause of action would have been barred under New York's single publication rule. The converse of this proposition, however, does not follow. An action which would not have been barred under New York's single publication rule may still be barred under § 13 of the Civil Practice Act if, because of an earlier date of accrual or a shorter period of limitation, it would be barred in the courts of the state where it has arisen. Under our interpretation of the applicable authorities, therefore, New York's single publication rule is an integral part of § 13 of the Civil Practice Act. The rule does not, however, "run across state lines" to determine the accrual date of actions arising under the law of foreign jurisdictions.