■ GENEVA ALBARRAN, as Administratrix of the Estate of JOSE M. ALBARRAN, Deceased, v CITY OF NEW YORK, Appellant, et al., Defendant. CITY OF NEW YORK, Third-Party Plaintiff-Respondent-Appellant, v LEASE PLAN, INC., et al., Third-Party Defendants, and BERKEY FILM PROCESSING, Third-Party Defendant-Appellant-Respondent. — Judgment of the Supreme Court, New York County, entered on February 15, 1980 (1) modified, on the law, to strike therefrom so much thereof as awards plaintiff Geneva Albarran the sum of $120,000, with interest, for loss of consortium; (2) reversed, on the law and on the facts, and a new trial ordered on the issue of damages only, without costs, with respect to the award for wrongful death unless plaintiff, within 20 days after service upon her of a copy of the order herein, with notice of entry, serves and files in the office of the clerk of the trial court a written stipulation consenting to reduce the verdict in favor of plaintiff to $261,400 and to the entry of an amended judgment in accordance therewith. If plaintiff so stipulates, the judgment, with respect to the award for wrongful death, as so amended and reduced, is affirmed, without costs and without disbursements. We are all in agreement that no action will lie in this State for loss of consortium in connection with a wrongful death action (Leff v Schildkrout, 49 NY2d 622). Indeed, plaintiff so concedes. Additionally, we are all in agreement that the verdict of $10,000 for pain and suffering during the 10-day period intervening between the accident and the date of death should not be disturbed. Nor is there any discord among us with respect to the propriety of the jury's apportionment of damages between the city and Berkey Film Processing. Our sole point of departure from our dissenting brother flows from what we conceive to be the excessive award in the death action. Deceased was a pickup and delivery man for Berkey. In 1969 his total annual earnings were $10,921. In 1970 they rose to $12,420 and in 1971 to $14,195. In 1972, the year of his death, they were $7,192. Annualized for that year they would have approximated $17,000. This included substantial periods of overtime in each year. Bottomed on these figures, we deem any verdict in excess of $250,000 excessive. To this sum we add the special damages properly recoverable and reduce the verdict in the death action accordingly. In the event a retrial of the death action becomes necessary, there are matters which, while not sufficient in themselves to warrant reversal, should be brought to the attention of the trial court. The deliberate endeavor of plaintiff's counsel to inject, by indirection, the issue of religion into the case should not be permitted. Civil, as well as criminal cases, are to be tried on the merits and not by the injection of matters of race, color or creed which can serve only to inflame the passions of the jury. Similarly, the other matters which emphasized the emotional trauma which resulted from decedent's death should be avoided. Concur — Markewich, Lupiano, Silverman and Bloom, JJ.

Ross, J., dissents in part in a memorandum as follows: We are unanimous in our determination that the verdict should be reduced by $120,000, the amount awarded for loss of consortium (Liff v Schildkrout, 49 NY2d 622). However, in this wrongful death action, no further reduction is warranted. It is at this juncture that I must part company with my colleagues. I cannot

concur in their decision to reduce the verdict to $261,400 and would cast my vote to affirm the judgment as modified by deducting therefrom the loss of consortium award. At the date of death, decedent, Jose Albarran, was in good health and 39 years of age. He was married, had a two-year-old daughter and the couple was expecting their second child. Albarran was employed by the same firm for the past 15 years. On May 16, 1972, decedent suffered a "painful" fracture of the left femoral leg shaft when a wire mesh cart toppled onto his leg on a city street. He was taken to a nearby hospital where his leg was placed in traction and remained in that condition for six days until surgery was performed. After this operation, deceased suffered a stroke on the right side as a result of clotting of the blood. He lapsed into a coma on May 23 and, after a second operation and three cardiac arrests, died on May 27. Expert medical testimony indicated that the competent producing cause of death was the accident on May 16. Testimony by deceased's employer indicated that Albarran was a faithful employee whose future with the company was "very good". Deceased elected to cover a territory which incurred more overtime work than others and meant more income to his family. His earnings for the period 1969 through 1972, had increased at an annual average rate of 16½% a year. His annual salary for the year of his death would have been approximately $17,261. An expert in economics testified that on a discounted rate decedent's loss of earnings to age 65 would be more than $750,000. If decedent worked five additional years, this sum would be considerably greater. The award of $330,000 for pecuniary loss in light of the above circumstances seems, at least to me, reasonable. This amount is less than one half of the total earnings lost as a result of deceased's untimely death. I am not prepared to reduce this verdict in the absence of a showing that the award of the jury patently exceeds the damages attributable to the injury suffered and its attendant consequences. The defendant fails to present any such evidence.