■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BRUCE WOOD, Appellant. — Appeal by defendant from a judgment of the County Court, Dutchess County (Aldrich, J.), rendered November 9, 1979, convicting him of murder in the second degree, upon a jury verdict, and imposing sentence.

Judgment affirmed.

At defendant's trial, a key defense witness chose to affirm, rather than swear, to the truth of his testimony. During cross-examination, the prosecutor sought to discredit the witness by inquiring about his refusal to take an oath and his belief in God. Although we do not condone this improper attempt to impeach the witness by inquiry into his religious beliefs or lack thereof (see, e.g., *Toomey v Farley*, 2 NY2d 71; *Brink v Stratton*, 176 NY 150; *People v Thomas*, 91 AD2d 857; Richardson, Evidence [Prince, 10th ed], § 387), we conclude that the trial court dissipated any prejudice resulting from the prosecutor's misconduct by delivering the following instruction to the jury:

"Dr. Stephen S. Teich, prior to testifying, made an affirmation rather than giving you an oath. An affirmation is, 'a solemn declaration made by a person who conscientiously decline [*sic*] taking an oath; is equivalent to an oath and is just as binding; if a person has religious or conscientious scruples against taking an oath, the Notary Public should have the person affirmed. The following is a form of affirmation: You do solemnly, sincerely, and truly declare and affirm that the statements made by you are true and correct.'

"The fact that this witness gave an affirmation rather than an oath has no legal consequences as his testimony should be given no less consideration nor no more consideration than those witnesses who have given an oath".

We disagree with our dissenting colleague Justice Titone that impeachment by inquiry into a witness' religious beliefs or lack thereof is per se reversible error in this State. The New York cases relied upon in his dissent are distinguishable and simply do not preclude us from finding that such error was harmless where, as here, the improper questioning was of relatively short duration, the trial court delivered satisfactory curative instructions, the evidence of guilt was overwhelming and there was no reasonable possibility that the error might have contributed to defendant's conviction (see *People v Crimmins*, 36 NY2d 230, 237-242).

For example, in *Brink v Stratton* (176 NY 150, *supra*), a party defendant (not, as in the case at bar, a mere witness) was asked on cross-examination whether he believed in the existence of a supreme being who would punish false swearing, and the trial court compounded this error by subsequently charging: " 'It is for you to say how far you are to attach credibility to his [the witness'] statements, how far his testimony is impeached as to what he has said here in regard to his religious beliefs' " (*Brink v Stratton, supra,* p 156). In sharp contrast, the instruction delivered by the trial court in the present case served to dissipate any

prejudice from the prosecutor's improper questions by correctly explaining, in unequivocal terms, that an affirmation is legally equivalent to an oath (see CPLR 2309, subd [b]), and that the testimony of a witness who affirms, rather than swears, to the truth of his testimony is not to be considered any differently.

We also note that in *Brink v Stratton* (*supra*), the reversal was based only partially upon the ground at issue here. In that case, the Court of Appeals unanimously agreed that the trial court had erred in not permitting a party to testify as to the hostility of certain witnesses called to impeach him. Five of the Judges agreed that, as an additional ground for reversal, the cross-examination regarding religious beliefs was error as well. However, we discern no language in *Brink* which would suggest that such an error, standing alone, requires reversal in every instance.

The other New York case relied on in Justice Titone's dissent is *Toomey v Farley* (2 NY2d 71, *supra*), a libel action based on alleged defamatory statements accusing plaintiffs of having Communist affiliations. Although defendants conceded at trial that plaintiffs were not Communists, the trial court permitted plaintiffs to adduce, as evidence-in-chief, proof that they were faithful and devoted to their religious beliefs and prominent and active in their church. The Court of Appeals held that such evidence was admissible under these circumstances to prove the damage occasioned by the defamatory statements; however, the court cautioned that in "all but the rarest of cases, the religious faith and observances *of a party* are matters entirely irrelevant to the issue presented, and their injection into a trial is improper and constitutes reversible error" (*Toomey v Farley, 2 NY2d 71, supra*; emphasis added). Clearly, the instant case is not governed by the foregoing principle, inasmuch as it involved the impeachment of a witness by inquiry into his religious beliefs, and not the question of whether evidence of a party's religious beliefs was relevant to an issue in the case, and therefore admissible as evidence-in-chief. Thus, we cannot agree that *Toomey* set down a per se rule requiring reversal in the case at bar. We conclude, rather, that under the present circumstances, the prosecutor's misconduct was not sufficient in and of itself to warrant reversal (see, e.g., *People v Thomas,* 91 AD2d 857, *supra; Albarran v City of New York,* 80 AD2d 784).

We have considered defendant's remaining contentions and find them to be without merit. Thompson, Bracken and Weinstein, JJ., concur.

Titone, J. P., dissents and votes to reverse the judgment of conviction and order a new trial, with the following memorandum: Defendant appeals from a judgment of the County Court,

Dutchess County, which convicted him of murder in the second degree in connection with the homicide of a young woman he had met at a bar. At trial, defendant did not dispute that he caused the young woman's death. Rather, defense counsel claimed that the defendant did not know "why he did what he did do" and the primary issue centered on defendant's sanity and intent at the time of the crime.

To that end, defense counsel called a line of witnesses in an effort to establish, among other things, that he was suffering from "Post-Traumatic Stress Disorder" (also referred to as "Vietnam Syndrome"). Key in this regard was the testimony of Dr. Stephen Teich, the only psychiatric testimony elicited by the defendant. According to Dr. Teich, defendant was suffering from a mental disease or defect at the time of the incident and lacked substantial capacity to know or appreciate the nature and consequences of his conduct or that such conduct was wrong.

Dr. Teich chose to affirm, rather than swear to his testimony, as was his right (CPL 60.10; CPLR 2309). Near the end of the People's cross-examination, the following occurred:

"Q What I want to ask, Doctor, is your own personal view of the difference in this theory of responsibility. Now I know that you affirmed your testimony in this case; is that true?

"MR. SAMMARCO [defense counsel]: Objection. What does that have to do with anything?

"THE COURT: Overruled.

"MR. SAMMARCO: Exception. It has to do with being expert in the field of psychiatry.

"THE COURT: Overruled.

"MR. SAMMARCO: Exception.

"Q Did you affirm your testimony in this case?

"A Yes, I did.

"Q Would you not swear under oath, swear to God to tell the truth, nothing but the truth? Would you personally not do that?

"A I affirmed.

"MR. SAMMARCO: I'm going to ask the Court to instruct the jury on an affirmation because [the prosecutor] brought it up and it's out of place.

"THE COURT: Application denied.

"MR. SAMMARCO: Exception.

"Q Do you believe in God, period?

"A I would like to complete my description of my affirmation because you asked me a question about swearing.

"As I understand the constitution of this country as a separation of church and state, and here I believe I'm in one of the organs of state, and any inclusion of reference to the church should be separated.

"So, I've chosen to separate it and take a course of action that is a lay course of action and that is to affirm and I do that out of choice".

Defendant requested a mistrial which was denied, the court advising counsel he could bring "it up in my charge", and, at that time, the court did explain that the affirmation was essentially equivalent to an oath.

In my view, the prosecutor's cross-examination constituted gross misconduct which was not cured by the court's charge purporting to define an affirmation. The motion for a mistrial should have been granted.

Our State Constitution provides that "no person shall be rendered incompetent to be a witness on account of his opinions on matters of religious belief" (NY Const, art I, § 3). This constitutional provision, separate and apart from the First Amendment to the Federal Constitution, constitutes a limitation on the power of the State government itself, in order to protect freedom of religious thought and to guarantee separation of church and state (see *Holland v Alcock,* 108 NY 312; *Matter of Kempf,* 252 App Div 28, affd 278 NY 613). The guarantee is meaningless if inquiry can be made of a witness as to his or her belief in God (*People v Jenness,* 5 Mich 305, 319).

Consequently, it has been settled law in this State for over 80 years, that inquiry into a witness's religious beliefs on cross-examination constitutes reversible error (*Brink v Stratton,* 176 NY 150, 156 *et seq.* [opn by Cullen, J., joined by four members of the Court]; *People v Thomas,* 91 AD2d 857; Richardson, Evidence [Prince, 10th ed], § 387 ["A witness' religious belief, or lack of it, may not be shown or commented upon for the purpose of affecting his credibility"]; see, also, Fisch, New York Evidence [2d ed], § 464; US Code, tit 28, Federal Rules of Evidence, rule 610; Proposed Code of Evidence for New York, § 610; Swancara, Impeachment of Non-Religious Witnesses, 13 Rocky Mt L Rev 336). Even in the few states that permitted such impeachment, the cases "are old, and we may assume that the decent restraint of lawyers leaves this field of impeachment to lapse into dormancy" (McCormick, Evidence [2d ed], § 48, pp 101-102, n 69).

The People do not seriously seek to justify the prosecutor's misconduct but urge, essentially, that it should be excused under the rubric of harmless error. I cannot agree.

Just like the right to an instruction that no unfavorable inference may be drawn from a defendant's failure to testify (*People v Britt,* 43 NY2d 111) and the right to a public trial (*People v Jones,* 47 NY2d 409), so, too, should cross-examination of witnesses concerning religious beliefs be immune from harmless error analysis. The few authorities that have dealt with the question view such cross-examination as per se reversible error, without examination of underlying prejudice (*State v Thomas,* 130 Ariz 432, 437 [admission of religious references "constituted fundamental error requiring reversal and a new trial"]; *People v Hall,* 391 Mich 175, 181-183; *People v Brocato,* 17 Mich App 277, 298; *State v Estabrook,* 162 Ore 476, 504-505; but cf. *State v Beal,* 199 NC 278 [a decision over 50 years old in which the court, in dicta, assumed that prejudice would have to be established]; *Commonwealth v Mimms,* 477 Pa 553, 559; [error prejudicial in context of case, no per se rule]; see, generally, Ann., 76 ALR3d 539, 553, § 7).

We would emasculate our precious constitutional protections if we were to examine each record to determine whether prejudice occurred because of this type of inquiry (*People v Hall, supra*). The Court of Appeals implicitly adopted a per se error approach in *Toomey v Farley* (2 NY2d 71, 82), noting that "[i]n all but the rarest of cases, the religious faith and observances of a party are matters entirely irrelevant to the issue presented, and their injection into a trial is improper and constitutes reversible error".

Moreover, this type of prosecutorial misconduct has long been condemned and for prophylactic reasons, reversal is required (cf. *People v Bailey,* 58 NY2d 272; *People v Ashwal,* 39 NY2d 105; *People v Alicea,* 37 NY2d 601). After all, "A prosecutor's performance, aimed at justice and not a conviction, must reflect self-discipline" (*People v Petrucelli,* 44 AD2d 58, 59). To put it more bluntly, "Although every trial may not be impeccably conducted and free of some error, we will not tolerate trials where unadulterated unfairness and deceit have become the rule. Even-handed justice requires more and, as the ultimate guardian of the rights of the People and defendants in the State, we have a right to expect more" (*People v Alicea, supra,* p 605).

In any event, defendant has suffered prejudice (see *State v Estabrook, supra,* p 505; *State v Mimms, supra;* cf. *People v Bailey, supra*). As indicated, the core question before the jury concerned defendant's sanity and intent and Dr. Teich was defendant's sole expert witness on the point. The People, of course, produced contrary experts. Since the prosecutorial misconduct involved a contested issue, it perforce cannot be deemed harmless (*People v Bailey, supra,* p 278).

Nor was the Trial Judge "a saving grace" (*People v Galloway,* 54 NY2d 396, 399). No prompt curative instruction was given (cf. *People v Arce,* 42 NY2d 179, 187; *People v Broady,* 5 NY2d 500, 516, cert den 361 US 8). "[W]hen, as here, the court overrules the defendant's objections and gives 'standing to the statement of the District Attorney as legitimate argument' * * * the possibility of prejudice is greatly enhanced" (*People v Ashwal,* 39 NY2d 105, 111, *supra*).

For these reasons, I dissent and cast my vote for reversal and a new trial.

O'Connor, J., dissents and votes to reverse the judgment of conviction and order a new trial, with the following memorandum: On this record, I cannot conclude that the prosecutor's arrant misconduct was harmless beyond a reasonable doubt and that defendant suffered no significant prejudice. Hence, I too would reverse and order a new trial.