THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BRUCE WOOD, Appellant.—Appeal by the defendant from a judgment of the County Court, Dutchess County (Hillery, J.), rendered July 2, 1986, convicting him of murder in the second degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is affirmed.

The defendant was charged with the brutal murder of a female acquaintance during the early morning hours of March 8, 1979. The two had met in a bar earlier in the night and returned to the victim's apartment, where they engaged in consensual sexual relations. Thereafter, the defendant struck the victim on the head repeatedly with a heavy glass bottle filled with pennies, and strangled her to death with a brassiere. Later in the day, the defendant went to the police and confessed to the killing. At trial, the defendant proffered the

affirmative defense of extreme emotional disturbance, admitting that he had killed the victim as alleged by the prosecution, but seeking to have the jury find him guilty of manslaughter instead of murder *(see,* Penal Law § 125.25 [1] [a]). The defendant contends that because he did not actively contest the People's version of the facts, the trial court committed reversible error and deprived him of a fair trial by allowing numerous black and white photographic prints and color slides of the victim and the crime scene to be admitted into evidence. We disagree.

The defendant was previously tried and convicted of murder in the second degree. His original defense was that he was suffering from a mental disease or defect at the time of the killing, and lacked substantial capacity to know or appreciate the nature and consequences of his conduct, or that such conduct was wrong. The conviction was affirmed by this court *(see, People v Wood,* 107 AD2d 830), but reversed by the Court of Appeals because of prosecutorial misconduct during cross-examination of the defendant's expert witness *(see, People v Wood,* 66 NY2d 374).

The photographic evidence at issue concerns a total of 44 exhibits which were received into evidence, including five black and white photographic prints of the victim's body taken in the postmortem examination room prior to the autopsy. Of these five exhibits, four show the victim's unclothed body, and the fifth shows the head wound with the body draped. Three of the four unclothed views exhibit only the head, shoulders and breasts of the deceased, each taken from different angles to illustrate how the brassiere was used to strangle the victim, the neck wound, and the head wounds, before and after cleansing. There were two other black and white prints of the victim's unclothed body taken on the bed at the crime scene. Both are poorly focused with one seeming to be an enlargement of a portion of the other. They are relevant as they visually depict where the body was found in the bed with blood pooled from the head wound, as well as coins from the broken bottle, and the brassiere used to strangle the victim. A total of five color slides exhibit unclothed views of all or a portion of the victim's body also on the bed at the crime scene, each taken from a different perspective.

At his second trial, the defendant's defense was that he had "snapped" and was "totally out of control" at the time of the killing because of an extreme emotional disturbance triggered by his dissatisfaction with the victim who reportedly turned her back on him and went to sleep after they engaged in

sexual intercourse. In connection with the affirmative defense, the defendant contended that his extreme emotional disturbance was explained or excused by several personality disorders, most prominent among them, post traumatic stress disorder arising from his service in the Vietnam war.

In order to obtain a conviction for murder, the People were required to prove beyond a reasonable doubt that the defendant, with intent to cause the death of another person, did cause the death of such person or of a third person (see, Penal Law § 125.25 [1]). To prove intent, it was necessary to establish that the defendant's "conscious objective" was to cause the death of the other person (see, Penal Law § 15.05 [1]). As noted by the Court of Appeals in *People v Patterson* (39 NY2d 288, 302): "Intent may not be inferred from the simple fact of killing, but must be proved by other facts. That New York will permit the defendant to establish the existence of mitigating circumstances, collateral to the principal facts at issue, does not detract in the smallest degree from the rule, long established in this State, that the prosecution must prove intent beyond a reasonable doubt."

In our view, the photographic evidence here was properly admitted to illustrate and corroborate other relevant evidence pertaining to the issue of the defendant's intent (see, *People v Stevens*, 76 NY2d 833, 835-836; *People v Pobliner*, 32 NY2d 356, *cert denied* 416 US 905). We also find that the photographic evidence was relevant to the jury's evaluation of the affirmative defense.

The extreme emotional disturbance defense is an outgrowth of the "heat of passion" doctrine which had long been recognized in New York as a mitigating circumstance distinguishing the crimes of murder and manslaughter (see, *People v Casassa*, 49 NY2d 668, 675). The defense has two principal components: (1) the defendant must have "acted under the influence of extreme emotional disturbance" (Penal Law § 125.25 [1] [a]), a wholly subjective test, and (2) there must have been "a reasonable explanation or excuse" (Penal Law § 125.25 [1] [a]) for such extreme emotional disturbance, "the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be" (Penal Law § 125.25 [1] [a]). The second component requires the fact finder to view the internal situation in which the defendant found himself, and the external circumstances as the defendant perceived them at the time of the killing, and to assess objectively from that viewpoint, whether the explanation or

excuse for his emotional disturbance was reasonable, so as to entitle him to a reduction of the crime charged from murder in the second degree to manslaughter in the first degree. In the final analysis, the statute is designed to give the fact finders "discretionary power to mitigate the penalty when presented with a situation which, under the circumstances, appears to them to have caused an understandable weakness in one of their fellows" *(People v Casassa, supra,* at 680).

The prime issue for the jury to determine in this case was the reasonableness of the excuse or explanation for the defendant's emotional disturbance. In this regard, the prosecution attempted to rebut the defendant's claim that he was totally out of control at the time of the killing, a factor that is critical in assessing the excuse, or explanation, for the defendant's extreme emotional disturbance *(see, People v Walker,* 64 NY2d 741, 743). Here, the prosecution's theory was that the defendant acted out of anger but with great control, and deliberation, and that the killing was the result of malevolence rather than an excusable or understandable human response deserving of mercy *(see, People v Casassa, supra,* at 681-682). The photographic evidence showing such details as the location and position of the victim's body, the location of various objects in the bedroom and surrounding area of the victim's apartment, and the nature and severity of the wounds, was used to illustrate and corroborate evidence offered with respect to the reasonableness of the excuse or explanation for the defendant's extreme emotional disturbance.

Since this was clearly a material issue that was in dispute, the photographic evidence was admissible. While the photographic evidence may have been unpleasant to view, particularly those prints showing the victim on the autopsy table prior to incision, they were nonetheless admissible despite the possibility that they might also have tended to arouse passion and resentment towards the defendant in the minds of the jurors *(see, People v Bell,* 63 NY2d 796, 797; *People v Pobliner,* 32 NY2d 356, *cert denied* 416 US 905, *supra; People v Gordon,* 131 AD2d 588, 589-590).

We cannot agree with our learned colleague's dissenting view that the prints and slides were offered solely to inflame the jury and prejudice the defense, and not because they had probative value, and that this evidence effectively prevented the jury from fairly and objectively considering the merits of the defendant's extreme emotional disturbance defense. We note that the thrust of the prosecutor's summation was that even if the defendant was acting under an extreme emotional

disturbance at the time of the murder, it was not reasonably explained or excused. In our view, he made appropriate references to various prints and slides, connecting them with testimony of witnesses which was offered in support of this theory. Additionally, we note that defense counsel did not voice an objection to the prosecutor's summation on the ground that his comments with respect to the photographic evidence were in any way inflammatory, and no request to charge was made with regard to how the jury should be instructed in evaluating such evidence. Moreover, the trial court advised the jury that any of the exhibits which had been received in evidence would be made available for examination by it during deliberations, upon receipt of a written request. However, the record indicates that no such written request was made.

Where, as here, relevance is demonstrated, the question as to whether, on balance, the jury should be permitted to view photographic evidence, is addressed to the sound discretion of the trial court. While we find that several prints and slides that were received into evidence over defense objections were duplicative, and on balance, perhaps should have been excluded, any error in this regard was clearly harmless considering all the other evidence properly admitted at the trial (see, *People v Stevens*, 76 NY2d 833, 836, *supra*).

We have considered the defendant's remaining contentions and find them to be unpreserved for appellate review or without merit, and we decline to address the unpreserved issues in the exercise of our interest of justice jurisdiction. Harwood, Miller and Ritter, JJ., concur.

Brown, J. P., dissents and votes to reverse the judgment, with the following memorandum. I dissent based upon my belief that the admission into evidence of numerous black and white photographic prints and color slides of the naked victim and the crime scene, including five photographic prints taken of the unclothed body on the medical examiner's autopsy table, deprived the defendant of a fair trial. Under the circumstances of this case, where the defendant admitted having committed the crime in the manner that the People alleged that it had been committed, the graphic and gruesome prints and the equally horrific color slides displayed to the jury, all of which were of limited, if any, probative value, effectively prohibited the jury from fairly and objectively considering the merits of the defendant's claim that he was suffering from post-traumatic stress disorder as a result of his service in

Vietnam and that he had acted under the influence of extreme emotional disturbance.

"Photographs of the victim's corpse are likely to arouse the passions and resentment of the jury and thus should not be admitted unless they tend to prove or disprove some material fact in issue *(People v Pobliner,* 32 NY2d 356)" *(People v Stevens,* 76 NY2d 833, 835). But further, even if relevancy is established, such photographs are not automatically admissible. The trial court must, once having concluded that the photographs are relevant, then determine whether, balancing the probative value of the photographs against their prejudicial effect, the jury should be permitted to view them *(see, People v Stevens,* 76 NY2d 833, *supra; see also, People v Bell,* 63 NY2d 796). The record before us fails to indicate that the trial court engaged in any such balancing before its practically wholesale admission into evidence of the photographic prints and slides. In my opinion, the prints and slides were not admissible because they did not tend to prove or disprove a material fact in issue. And further, even assuming that the prints and slides had relevancy, it is clear to me that the prejudice engendered by virtue of this nauseating display far outweighed any conceivable probative value attendant thereto, and that the defendant was deprived of a fair trial as a result thereof.

In his opening statement the prosecutor indicated that he expected to establish that the defendant, after having engaged in consensual sexual relations with the victim, inflicted multiple blows to her head by use of a heavy object, probably a bottle full of pennies, and then killed her by knotting a brassiere around her neck and strangling her with it. In fact, the defendant had voluntarily surrendered to the police the day following the incident and confessed to the killing. Defense counsel conceded at trial that the victim's death occurred precisely as the prosecutor had indicated, and argued only that the defendant had acted under the influence of an extreme emotional disturbance for which there was a reasonable explanation or excuse *(see,* Penal Law § 125.25 [1] [a]). Thus defense counsel sought to have the jury find the defendant guilty of manslaughter in the first degree, but not guilty of murder in the second degree. The issue with which the jury was faced, therefore, was clear: Were the defendant's admittedly intentional acts *(see,* Penal Law § 125.20 [2]; *People v Patterson,* 39 NY2d 288, 302), committed while he was acting under an extreme emotional disturbance for which there was a reasonable explanation? Although the People were, regard-

less of the defendant's concessions, required to prove beyond a reasonable doubt that the defendant's acts were intentional, given the posture of the defense it cannot be said that intent was "material fact in issue" *(People v Pobliner, supra,* at 369). Since the only proffered purpose for admitting the prints and slides into evidence was to establish that the defendant's acts were intentional or deliberate, and the issue was not in dispute, it is my view that the prints and slides were not admissible *(see, People v Blake,* 139 AD2d 110, 116; *cf., People v Sims,* 110 AD2d 214, 222).

But, even assuming that the evidence under consideration was relevant to a material issue in the case, I conclude that the trial court improvidently exercised its discretion in admitting it *(see, People v Stevens,* 76 NY2d 833, *supra).* Given the testimony of the victim's roommate and the ambulance attendant and the police officers who first arrived on the scene as to the condition of the victim's body when it was discovered the morning after the homicide, as well as their testimony with respect to the crime scene and the defendant's confession and his counsel's concession that the homicide had occurred as the prosecution claimed that it had, and the detailed medical testimony, the prints and slides in which the victim's body or some portion thereof frequently appeared can be said to have had only the slightest probative value. Certainly no purpose was served by inundating the jury with numerous prints and slides depicting the same gory scene from different angles and distances, to say nothing of the five autopsy prints. One need only briefly review the prints and slides of the victim's naked body and of her battered head, unrecognizable from having been beaten with a bottle full of pennies with enough force to have broken the bottle, and clearly showing the effects of strangulation, to realize the devastatingly prejudicial effect they must have had upon even the most strongly constitutioned of jurors.

I can reach no other conclusion but that the prints and slides were offered not for any probative value that they might have had, but rather to inflame the jury and prejudice the defense.