MAX E. GREENBERG et al., Respondents, *v.* BAR STEEL CON-STRUCTION CORPORATION, Appellant.

First Department, June 29, 1971.

*Joseph P. Napoli* of counsel (*Harry H. Lipsig,* attorney), for appellant.

*Emanuel Harris* of counsel (*Max E. Greenberg* with him on the brief; *Murray B. Trayman,* attorney), for respondents.

*Per Curiam.* The plaintiffs (Greenberg and Bass), who are attorneys, brought this action to recover for legal services rendered to defendant, a corporation, in the prosecution for it of certain claims for moneys allegedly due under improvement contracts with Merritt-Chapman & Scott Corporation. At the close of a lengthy jury trial, the court directed a verdict for the plaintiffs for the full amount claimed in a cause of action wherein it was alleged that the defendant had agreed to pay a "contingent fee of twenty (20%) per cent of any recovery" from

Merritt-Chapman & Scott. Now, following the transcribing of the testimony, a review of the record reveals questions of fact which should have been submitted to the jury and, therefore, a new trial will be required.

It is regrettable that, following this trial lasting several weeks, the trial court did not reserve decision on the plaintiffs' motion for a directed verdict and then submit the case to and take the verdict of the jury. Thereby, the trial court would not have relinquished its prerogative to consider the motion on its merits and could have done so following the taking of the verdict. Had such course been followed, the several weeks of valuable court time probably would not have been wasted.

In determining whether or not the case should be submitted to the jury, the trial court was required to take the view of the evidence most favorable to the defendant and, upon the proofs and the inferences reasonably to be drawn therefrom, to determine whether under the law a verdict may be found for the defendant. The test was not whether a verdict for the defendant would be set aside as contrary to the weight of the evidence, but whether by any rational process the jury could find for the defendant. (See *Blum* v. *Fresh Grown Preserve Corp.*, 292 N. Y. 241, 246; *Woodson* v. *New York City Housing Auth.*, 10 N Y 2d 30, 33; *Swensson* v. *New York, Albany Desp. Co.*, 309 N. Y. 497, 505; *Lubelfeld* v. *City of New York*, 4 N Y 2d 455, 461; *Wearever Upholstery & Furniture Corp.* v. *Home Ins. Co.*, 286 App. Div. 93, 95; *Schatten* v. *Vogel*, 7 A D 2d 718; *Siegel* v. *McDonnell & Co.*, 25 A D 2d 382.) Applying this test, we conclude that there were questions of fact for the jury.

According to the complaint and bill of particulars, the action is grounded upon the retainer of the *two plaintiffs* as attorneys under an agreement to pay to them a 20% contingent fee, including on the "retainage" owing by Merritt-Chapman & Scott. It is stated that the agreement was partly in writing and partly oral and that the writings relied upon by plaintiffs consist of two letters, one dated April 17, 1961 and the other dated April 28, 1961. The letter of April 17, written by plaintiff Bass to defendant, confirms *his* retainer by defendant and notes that *he has* "retained the services" of Greenberg "as Special Counsel in the matter". Although the letter generally provides for the payment of a contingent fee of 20% of any recovery obtained against Merritt-Chapman & Scott, the defendant, before signing an acceptance of the letter, placed thereon an indorsement stating that: "There will only be a 2% charge on the retainage—if it is involved". The defendant insists

that this indorsement represented the understanding between the parties and that its obligation is limited to a fee of 2% of that portion of the recovery representing the "retainage * * * involved" in the Merritt-Chapman & Scott litigation. But the trial court, holding that there was no question of fact as to the understanding between the parties, directed judgment for the plaintiffs for 20% of the total recovery, including on the retained percentages, amounting to $370,000. The plaintiffs insist that they are entitled to the 20% thereon because the bringing of an action against Merritt-Chapman & Scott was required to recover the same, as well as to recover the further balance alleged to be due defendant, and Merritt-Chapman & Scott had generally contested the recovery by pleading a general denial and by setting up counterclaims for damages for delays and for materials delivered to and appropriated by defendant.

The trial court, in directing the verdict for plaintiffs, held that the defendant was bound by the April 28 letter which states that Greenberg is employed as special counsel under an arrangement whereby, in the event of a trial, Greenberg would receive 13.33% (⅔rds of 20%) of "retained percentages" where they were "not conceded amounts"—where "for any valid reason [they] are not conceded sums * * * then and only in such event shall a fee be due you on such retained percentages" (computed at ⅔rds of 20%). But this particular letter is neither signed by nor addressed to the defendant. It is merely a letter by the plaintiff Bass to the plaintiff Greenberg whereby Bass retains Greenberg as "special counsel to me." It does not in itself constitute an agreement by the defendant to retain plaintiffs Bass and Greenberg. Janien, defendant's president, testified that he had not seen or approved the April 28 letter; that the April 17 letter was defendant's only contract in the matter; that the defendant's contract was with Bass only and that Bass had so stated; that defendant had nothing to do with Greenberg and had no contract with him; that the fee of the litigation man (Greenberg) was to be included in Bass' fee which was provided for by the April 17 letter.

The directed verdict for plaintiffs may not be sustained on the theory, as stated by the trial court, that "attorney Bass as a matter of law was authorized as the defendant's agent to employ attorney Greenberg as trial counsel and on the terms as set forth in the letters of April 17 and April 28, 1961." Although Janien testified that he left it "entirely to Mr. Bass to arrange the terms" with Greenberg, a trier of the facts could find that such testimony was entirely consistent with Janien's position

that Greenberg's fee was of no concern to defendant inasmuch as Greenberg's fee was to be paid by Bass out of the fee received by him from the defendant; that Janien's admissions as to Bass' authority to make an agreement for the retainer of Greenberg was limited to the arranging of terms consistent with the agreement already made with Bass whereby, according to Janien, the defendant was to pay only 2% on the retained percentages.

We have not overlooked the plaintiffs' insistence that the defendant's indorsement on the April 17 letter calling for the payment of only 2% of the "retainage" was accepted by plaintiffs with the understanding that the 2% was solely applicable to sums not involved in the litigation; that this was the agreement of the parties. The Court of Appeals, on the prior appeal, had noted this contention of the plaintiffs (see 22 N Y 2d 210, 213). Disregarding the factual issue presented, the trial court held as a matter of law that, inasmuch as " the sums * * * retained * * * were disputed, contested and litigated " by Merritt-Chapman & Scott, " the retained money lost its character as retainages ". Such matter of law holding was, however, unjustified in that, as aforenoted, Janien's testimony, considered as a whole, presented an issue as to whether there was an understanding as claimed by plaintiff.

Certainly, the credibility of Janien as a witness was for the jury, and we conclude that his testimony that the defendant had made no agreement with Greenberg and had agreed to pay only 2% on the retained percentages presented issues of fact.

Furthermore, jury issues arise because of the ambiguity in the wording of the writings. The indorsement limiting the payment to 2% " on the retainage — if it is involved " is subject to construction, and there is basis for a finding that the 2% was applicable even if the retainage was " involved " in litigation.

Also, construing the language of the letters involved and on the basis of the testimony, there existed a question whether, in providing for fee of " 20% of such amount as is recovered * * * by such judgment " the parties intended that the fee be based upon an amount actually recovered instead of on the face amount of the judgment. In this connection, the Court of Appeals, on the record before it, did observe that there was a question " whether this retainer agreement warrants interpretation " (22 N Y 2d 210, 213). We conclude that there was such ambiguity in the letters, construed together, that the jury might conclude that they failed to adequately express the terms of plaintiffs' retainer by defendant (see 22 N Y 2d 210, 213). If a

jury so found, then it was for the jury to determine the terms actually agreed upon and the writings, as to wording prepared by plaintiffs, were to be construed most favorably to the defendant (see 22 N Y 2d 210, 213). Finally, if it were found that the understanding was that plaintiffs were only entitled to 20% of the amount actually recovered by defendant, whether by means of a trial and judgment or otherwise, then it was a question of fact whether, as expressly alleged by plaintiffs, the settlement of the judgment for $707,000 "was not in good faith".

In view of the foregoing, the judgment for plaintiffs entered upon the direction of the verdict by the trial court should be reversed, on the law, and a new trial directed with costs to abide the event.

KUPFERMAN, J. P. (dissenting). To direct a new trial here on the main reasons outlined can only be considered supererogatory.

The real question is whether plaintiffs are entitled to 2% or 20% on "retainages".

Except for the testimony of Janien, which, in view of the surrounding circumstances was inherently incredible and indicated at best a " none so blind as those who will not see " attitude, it is clear that for litigation 20% would apply and that the 2% came into the picture if negotiation was the only route pursued.

If, as a Trial Judge, I too would have considered that the conclusion was clear, I cannot say that the trial court here was wrong on that score.

However, on the collateral issue of whether the percentage would apply to the judgment figure or the lesser settlement figure, the situation was such that I would provide for the lesser settlement figure, and, only if the plaintiffs failed to so stipulate, would I reverse and order a new trial.

STEUER, TILZER and EAGER, JJ., concur in *Per Curiam* opinion; KUPFERMAN, J. P., dissents in an opinion.

Judgment, Supreme Court, New York County, entered on July 14, 1969, so far as appealed from, reversed, on the law, and a new trial directed, with costs and disbursements to abide the event.