■ LISANETTE ROSARIO, an Infant, by Her Mother DELIA

VASQUEZ, et al., Appellants, v CITY OF NEW YORK, Respondent. —Judgment of the Supreme Court, Bronx County (Hansel McGee, J.), entered on September 14, 1988, which granted defendant's motion to dismiss pursuant to CPLR 4401, unanimously reversed, on the law, without costs, the complaint reinstated, and the matter remanded to Supreme Court for a new trial.

On this appeal, we are asked to extend liability to the City of New York for failure to take steps to attenuate injury which resulted, in this instance, from a deliberate act of a third party.

The essential facts are not in dispute. On July 31, 1985, the infant plaintiff, Lisanette Rosario, then seven years old, was taken to a city-owned park at 148th Street between College Street and Morris Avenue in Bronx County as part of a day-camp group operated by Saint Rita's Church, located at 148th Street and College Avenue. As Lisanette climbed the ladder of a slide to join a friend who was waiting for her so that they could go down the slide together, an older girl, by the name of Dina, who apparently wished to climb up ahead of her, tugged at her clothes. As Lisanette stepped off the platform at the top of the slide onto the sliding board and began to sit down, Dina pushed her on the left side of her back. Lisanette fell from a point between 5 and 7½ feet above the ground, over the right side of the slide, landing on her outstretched left hand on the asphalt surface of the playground. As she fell, her legs struck her friend, who was seated on the slide in front of her, knocking the youngster off the slide. Lisanette sustained a transverse fracture of the distal portion of the left radius and ulna and a supracondylar fracture of the humerus. She rolled onto her back, and her friend landed on top of her on her stomach, sustaining only a scratch.

The theory upon which recovery is predicated is that the city was negligent in failing to provide a cushioned surface beneath the slide which, it is asserted, may have reduced the severity of the infant plaintiff's injuries. At the close of plaintiffs' direct case, Supreme Court granted defendant's motion to dismiss the action for failure to establish a prima facie case (CPLR 4401). The court stated that the cause of the infant plaintiff's injury was the push by the child, Dina, which resulted in Lisanette's fall from the sliding board. The court concluded that all plaintiffs' expert witnesses had suggested is that "had there been any padding the injury would not have been as severe. Consequently, I'm forced to grant the motion."

The assumption implicit in Supreme Court's ruling, that no

liability can be imputed to the city based upon the behavior of the aggressor, Dina, is entirely correct. In order to render a municipality liable for an activity on its property which causes injury, the activity must be ultrahazardous and the city must have actual or constructive notice thereof *(Rhabb v New York City Hous. Auth.,* 41 NY2d 200, 202; *Caldwell v Village of Is. Park,* 304 NY 268, 275). Thus, where a neighborhood block association complained of fireworks being detonated, rubbish thrown and papers set on fire in a playground over a two-month period, the municipality was found liable to an infant who sustained the loss of an eye when struck by an exploding firecracker *(Nicholson v Board of Educ.,* 36 NY2d 798). Likewise, the State was found liable for the death of a pedestrian struck by a bicyclist taking part in a time trial held on the State Office Building Campus in Albany, an activity which the State permitted to take place several times a week *(O'Connor v State of New York,* 70 NY2d 914). However, bicycle riding on a busy park promenade in violation of a city regulation does not constitute ultrahazardous and criminal activity for which the municipality may be cast in damages *(Solomon v City of New York,* 66 NY2d 1026), nor do rubbish fires in a lot where children routinely play *(Benjamin v City of New York,* 99 AD2d 995, *affd* 64 NY2d 44).

In the matter under review, it cannot be said that the dangerous and aggressive conduct of the 10-year-old Dina remotely approaches the standard for imposition of liability on the city, viz., " 'ultrahazardous and criminal activity of which it has knowledge' " *(Solomon v City of New York, supra,* at 1027). It is well settled that the city is under no duty to provide immediate supervision of playground equipment *(Peterson v City of New York,* 267 NY 204, 206; *see also, Nicholson v Board of Educ., supra,* at 802), a duty which, in any event, had been affirmatively undertaken by staff members of Saint Rita's Day Camp. Nor is there a contention that the slide itself was in any way defective. Questions remain, however, whether the city breached a standard of care to protect children from injury due to falls by installing a cushioned surface around playground equipment and whether Supreme Court was correct in its (again) implicit assumption that the act of shoving the infant plaintiff by the child, Dina, constitutes an intervening agency so as to interrupt the chain of causation which follows from the breach of that asserted duty.

The second question is easier to answer than the first. If it is accepted, arguendo, that there is duty to provide a padded

surface, that duty subsumes the acknowledgment that a fall, from whatever cause, is a likely occurrence. Moreover, if the intervening agency, in this case a push from another child, is itself a foreseeable hazard, a finding of proximate cause is entirely appropriate. As one authority expressed the principle, "once it is determined that the defendant's duty requires him to anticipate the intervening misconduct, and guard against it, it follows that it cannot supersede his liability" (Prosser, Torts § 44, at 275 [4th ed]; *see, Nallan v Helmsley-Spear, Inc.,* 50 NY2d 507). If plaintiffs' evidence is sufficient to establish a duty on the part of the city to reduce injury from falls, then the occurrence of a foreseeable event, such as a push from another child, will not preclude a finding of liability for a breach of that duty.

The question of whether, as a matter of law, a duty is imposed upon the city in the first instance presents a novel issue. Plaintiffs cite no authority in this jurisdiction which has premised liability on the existence of a hard, artificial surface beneath playground equipment. To the contrary, the traditional rule in this State has been that a properly constructed and maintained asphalt surface does not constitute an unsafe and dangerous condition so as to subject the owner of a playground to liability *(Stewart v New York City Hous. Auth.,* 33 AD2d 901 [1st Dept 1970]; *McGill v 39 Casino St. Corp.,* 16 AD2d 832 [2d Dept 1962]). The only case plaintiffs have brought to our attention which remotely supports their proposition is *Hunt v Board of Educ.* (43 AD2d 397, 399 [1974]) in which the Third Department stated that whether it was negligent to permit a six year old to use, without supervision, a "Jungle Bar" over a paved surface "in view of the general physical capacity of such an infant" was a question for the trier of fact. (This decision has never been cited in a reported opinion.)

The subject of padded surfacing in playgrounds has been raised in recent cases before the appellate courts of Illinois and Florida. In a case involving virtually identical facts to those at bar, the Appellate Court of Illinois, Fourth District, reversed in part and affirmed in part the dismissal of the complaint for failure to state a cause of action, holding that while the defendant was under no duty to provide a padded surface under the slide, its failure to provide protective railings to prevent children from falling from the top platform was sufficient to make out a cause of action *(Kirby v Macon Pub. School Dist. No. 5,* 169 Ill App 3d 416, 523 NE2d 643 [1988]). In reaching this conclusion, the court relied on an

earlier decision by the First District Appellate Court which held that an asphalt surface under a slide does not create a dangerous condition so as to subject the landowner to liability for injury to children and that plaintiffs had failed to meet their burden to "demonstrate that the combination of surroundings creates a risk greater than those to which children are exposed in their everyday lives" *(Alop v Edgewood Val. Community Assn.,* 154 Ill App 3d 482, 486-487, 507 NE2d 19, 22 [1987]). The court concluded that, as a matter of law, the defendants owed no duty to the infant plaintiff where she "was permitted to play unsupervised on a slide which posed an obvious risk to her" *(Alop v Edgewood Val. Community Assn.,* 154 Ill App 3d 482, 488, 507 NE2d 19, 23, *supra).*

In 1985, the Supreme Court of Florida adopted a more liberal view on this issue. While noting that the Florida courts have foreclosed liability where playground equipment contained no latent defects, was not negligently constructed and posed no danger that a child could not readily comprehend, the court nevertheless held that a complaint alleging that the City of Miami violated its own standards as well as those of the playground industry by situating monkey bars above hard-packed ground stated a cause of action. The court found no reason why earlier decisions "should protect a municipality or other public agency from liability for the negligent operation of playground equipment. Public safety and welfare demand that a public agency be responsible for meeting its own standards at the very least" *(City of Miami v Ameller,* 472 So 2d 728, 729). We find this reasoning persuasive.

The record in the matter before us contains the assertion by plaintiffs' expert witness that the city had a "specification" which called for 1½ inches of padding under playground equipment. The source of this "specification" (a term not defined by the witness), its effective date and its scope, particularly its application to existing city playgrounds, were not disclosed.

Upon a motion by a defendant for judgment as a matter of law, the test is whether the jury could find for the plaintiff by any rational process *(Blum v Fresh Grown Preserve Corp.,* 292 NY 241; *Prince v City of New York,* 21 AD2d 668). Questions were raised by plaintiffs' evidence as to the existence of a standard from which a duty on the part of the city might be derived and whether the city complied with that standard. These issues preclude dismissal because a rational jury could have found that an applicable standard was in effect at the time of the infant plaintiff's injury and that the city failed to

comply with its own standard *(see, Nallan v Helmsley-Spear, Inc.,* 50 NY2d 507, 519-520, *supra; Rhabb v New York City Hous. Auth.,* 41 NY2d 200, 202-203, *supra).* Therefore, a new trial is required.

From the standpoint of judicial economy, the practice of granting judgment at the close of plaintiff's case (CPLR 4401) is seldom commendable. As one commentator observed, "If the trial judge grants judgment for a side under CPLR 4401 without letting a jury pass on the issues, an appellate court which disagrees with his action has no verdict to reinstate and must therefore order a new trial, wasting the earlier one" (Siegel, NY Prac § 405). Unless it appears that the defendant's case will consume an inordinate amount of the trial court's time, the better practice is to submit the case to the jury which, in some instances, may obviate defendant's CPLR 4401 motion by returning a defendant's verdict *(see, Greenberg v Bar Steel Constr. Corp.,* 37 AD2d 162, 163). Concur—Ross, J. P., Asch, Rosenberger, Smith and Rubin, JJ.