■ MARIE L. VERA, as Executrix of MARINA T. VERA, Deceased, Appellant, v KNOLLS AMBULANCE SERVICE, INC., et al., Respondents.—Judgment of the Supreme Court, New York County (Aaron E. Klein, J.), entered January 17, 1989, which granted defendants' motions at the close of plaintiff's direct case to dismiss the complaint for failure to establish a prima facie case (CPLR 4401), unanimously modified, on the law, to the extent of denying the motion as to defendant Knolls Ambulance Service, vacating the judgment in its favor and remanding the action against it to Supreme Court for a new trial and, except as so modified, affirmed, with costs.

Plaintiff's decedent Marina T. Vera, who was 51 years old at the time of her injury, suffered from metastatic breast cancer with metastases to the bone marrow, brain, spine and femur. The disease severely weakened her bones with the result that spontaneous fractures (viz., sustained in the absence of trauma) of the spine, clavicle, scapula, ribs and pelvis are mentioned in the record. At the time of the accident, decedent's condition was being followed postoperatively by her orthopedic surgeon, Melvin Rosenwasser, M.D., after surgery to replace the joint in her left hip in 1984.

The amended verified complaint states that, on February 10, 1986, plaintiff's decedent was being transported by defendant Knolls Ambulance Service (Knolls) to Columbia Presbyterian Medical Center for an appointment with Dr. Rosenwasser. It is alleged that, as a result of the negligence of Knolls' employee, decedent was thrown from the wheelchair being used to move her from her apartment to the ambulance, sustaining "serious, severe, divers and protracted personal injuries of a permanent nature." The accident was witnessed by plaintiff Marie Vera, decedent's sister, with whom she had lived since January 16, 1986 and who accompanied her to Dr. Rosenwasser's office. There decedent was diagnosed as having a fracture of the left femur at midshaft and was admitted to the hospital. Dr. Rosenwasser testified that the fracture was displaced, noting that an X ray taken on the day of the accident shows that "the bone is lying side-to-side instead of end-on."

Upon cross-examination, defense counsel elicited from Dr. Rosenwasser testimony that both his hospital notes of February 11, 1986 (the day after decedent's admission to the hospital) and his office notes of February 10, 1986 refer to a fall by decedent which occurred "one day prior to admission" (Feb. 9, 1986). Plaintiff, in her testimony, denied telling anyone that her sister fell on February 9th, but rather that decedent had fallen one week earlier. She further testified that, on the date

of the accident, decedent had walked about 10 feet into the bathroom, which was the normal extent of her ability to ambulate. In the course of his direct testimony, Dr. Rosenwasser stated that, in his opinion, decedent's displaced fracture was caused by her fall from the wheelchair. On cross-examination, however, it was elicited that he last saw decedent on September 16, 1985 and that his knowledge of her condition, specifically her ambulatory capacity, was based on the history given by decedent and her sister. Upon being informed of decedent's cancer medication, which included Tylenol 3 for pain and Decadron (1 mg), a drug which induces euphoria, Dr. Rosenwasser conceded that he did not know which of the three falls mentioned in the record (a week before, a day before and the day of decedent's admission to the hospital) could have resulted in a *nondisplaced* fracture of her femur. He did state with confidence, however, that it would have been impossible for decedent to walk or even shuffle with such a fracture because placing any weight on a fractured femur, even if the fracture remains aligned, would cause it to immediately displace.

Upon defendant Knolls' motion at the close of plaintiff's case, Supreme Court dismissed the action on the ground that plaintiff had failed to establish that the fall from the wheelchair on February 10, 1986 was the cause of decedent's injury and that it would be impossible to permit the jury to speculate as to the cause of the accident.

The rule governing this situation was stated in *Rhabb v New York City Hous. Auth.* (41 NY2d 200, 202): "Upon defendant's motion made at the close of plaintiffs' case, the test was whether there was any rational basis on which a jury could have found for plaintiffs, the plaintiffs being entitled to every favorable inference which could reasonably be drawn from the evidence submitted by them". In the case under review, if the jury believed plaintiff's testimony that her sister was walking on the date of the accident and Dr. Rosenwasser's medical opinion that decedent could not possibly have walked on a fractured femur, they could have rationally found that the fall from the wheelchair was the proximate cause of her injury. Even if the jury did not credit plaintiff's testimony regarding decedent's ambulatory capability, they could nevertheless have concluded that the fall from the wheelchair aggravated an existing fracture of the femur by causing it to become displaced based upon the doctor's testimony that a prior fall could have caused a nondisplaced fracture. There are, therefore, two distinct theories upon which the jury might have

based an award of damages against defendant Knolls *(cf., Bernstein v City of New York,* 69 NY2d 1020, 1021-1022).

As to defendant Paul Management Company, there is no testimony to the effect that the step down which decedent's wheelchair was allowed to roll, causing her to be thrown to the floor, was in any way defectively constructed, in a state of disrepair or in violation of any provision of the Building Code or other applicable law or regulation. Therefore, the motion to dismiss was appropriate with respect to this defendant.

We must again emphasize, as we did in *Rosario v City of New York* (157 AD2d 467), that granting judgment at the close of plaintiff's case is generally ill-advised. The appellate decisions in this area reflect the reluctance of the courts to withhold from a jury any case which presents a theory upon which recovery might be predicated *(see, Nallan v Helmsley-Spear, Inc.,* 50 NY2d 507; *Rhabb v New York City Hous. Auth.,* 41 NY2d 200, *supra).* Moreover, where, as here, judgment is improvidently granted at the close of plaintiff's case (CPLR 4401), there is no jury verdict which may be reinstated by the appellate court, leaving no alternative but to order a new trial which, as in the instant case, will largely duplicate the prior proceeding. Therefore, unless it appears that a defendant's case is particularly lengthy, it is far better practice to withhold any ruling on an application to dismiss until after the jury has returned a verdict. Concur—Murphy, P. J., Kupferman, Ross, Asch and Rubin, JJ.