324

ENGA WHITE, an Infant, by Her Mother and Natural Guardian, EDNA WHITE, et al., Plaintiffs, v CITY OF NEW YORK et al., Defendants.

NEW YORK CITY HOUSING AUTHORITY, Third-Party Plaintiff-Respondent, v ALL CITY INSURANCE COMPANY, a Division of Empire Insurance Group, Third-Party Defendant-Appellant, and ENGA WHITE, an Infant, by Her Mother and Natural Guardian, EDNA WHITE, et al., Third-Party Defendants-Respondents.

First Department, June 18, 1992

## APPEARANCES OF COUNSEL

*Martin S. Rothman* of counsel *(Alyne I. Diamond* with him on the brief; *Adolph B. Salib* and *Seligson, Rothman & Rothman,* attorneys), for third-party defendant-appellant.

*Bruce M. Young* of counsel *(Elisa F. Cullen* and *Phyllis Chu* with him on the brief; *Kanterman, Taub & Breitner, P. C.,* attorneys), for third-party plaintiff-respondent.

## OPINION OF THE COURT

WALLACH, J.

In this declaratory judgment action, we are called upon to consider whether a 10-year delay by a public authority in reporting a personal injury claim to its liability insurance carrier complied with a policy provision requiring notice of a pertinent occurrence to be furnished "as soon as practicable". Under the circumstances presented here, we conclude that the decade-long delay constituted a breach of the insured's contractual obligations under the policy which entitled the carrier to disclaim any duty to defend or indemnify the claim.

On September 2, 1975 Enga White, then just under four years of age, fell from a slide at the playground of the Jackie Robinson Project at 111 East 128th Street in Manhattan, owned and maintained by third-party plaintiff New York City Housing Authority (the Authority), sustaining an injury later

diagnosed as a fractured skull which required six days' hospitalization. Housing Police Officer Arthur Jackson, who responded, filed in triplicate with his precinct command an incident report dated December 29, 1975, describing the occurrence as follows: "Summoned to 110 E. 129 St. #3M on request of tenant, Mrs. Augusta Babers, who stated that her grand-daughter, in her custody, who had allegedly fell off the sliding pond in the children's playground, was complaining of *pains in the left side of her head. Child seemed to be lapsing into unconsciousness, and going into convulsions.* Pulse was normal. Breathing heavy. Ambulance arrived immediately with units 25th Pct. P.O. Conboy # 31743 making Aided Report for Pct. Witness to fall was child's brothers WHITE *[sic.]*, Banan (14), Maurice (13) and William (9). Area inspected immediately after and found dry. Sliding Pond used found without any defects. Child accompanied to hosp. by her mother Mrs. Edna White, to give officer an Adult Witness." (Emphasis added.)

Ten years after the accident, on or about September 11, 1985, Enga's mother, on her daughter's and her own behalf, moved to serve a late notice of claim on the Authority. The underlying papers conceded that the Authority had received no notice of the occurrence other than that contained in the police accident report. The mother's affidavit set forth that her child first suffered seizures in 1984, which claimants attributed to the playground accident. An order not at issue on this appeal, entered on September 11, 1986 (Harold Baer, J.), permitted the late filing for only the infant's claim.

The Authority gave third-party defendant Empire Insurance Group its first notice of the claim by forwarding the infant's moving papers to the carrier on or about October 22, 1985. One week later, Empire disclaimed coverage because of the lateness of notice.

The Authority then commenced this third-party action for declaratory judgment. A hearing was held concerning the disclaimer, and whether the Authority had given notice of the occurrence "as soon as practicable", an express policy requirement. An Authority employee testified that as a matter of routine practice, notice would be given to the insurer either at the time of the underlying occurrence by means of a special notification form submitted by a project manager, or by providing the insurer with the notice of claim. Officer Jackson testified that this particular incident report was for internal

use only, and that no copy had been sent in the regular course of business to the Authority's housing manager ordinarily responsible for delivering notice of liability exposure to Empire.

Citing *Caselli v City of New York* (105 AD2d 251) and *Tarquinio v City of New York* (84 AD2d 265, *affd* 56 NY2d 950), the IAS court held that knowledge of an accident by its police department cannot be imputed to a public or municipal corporation. *(Cf., Williams v New York City Hous. Auth.,* 179 AD2d 523, where the Authority's employees received virtually immediate, actual notice of the incident.) But those decisions and others of like import rest upon the statutory requirements of General Municipal Law § 50-e, which impose upon a liability *claimant* a condition precedent to the maintenance of an action—namely, the service of a prescribed form of notice within fixed time limits upon a designated officer of the municipality. Here the *Authority's* duty of notification is not controlled by that statute, but by its *contractual* obligation under its insurance policy to furnish notice to its own insurance carrier "as soon as practicable". If the insurance contract required the Authority to upgrade the level of its employees' performance in receiving, recording and transmitting information with respect to occurrences bearing the risk of liability, its failure to do so did not annul the obligation. The Authority's 10-year delay here constituted a clear breach of the prompt reportage policy provision, entitling the carrier to disclaim *(Security Mut. Ins. Co. v Acker-Fitzsimons Corp.,* 31 NY2d 436).

An alternate basis for the denial of disclaimer by IAS was that the Authority might have entertained a good-faith belief that no liability would arise from the accident, citing *North Am. Co. for Prop. & Cas. Ins. v York Equities* (81 AD2d 770, *lv denied* 55 NY2d 606). This contention, utterly inconsistent with the first argument, in effect asks us to accept the notion that Officer Jackson's knowledge cannot be imputed to the Authority, while at the same time he (or some immediate supervisor) is entitled to exercise a discretionary judgment that no liability could arise from this fall by an infant from an instrumentality owned and controlled by the Authority, where the child manifests the gravest life-threatening symptoms requiring immediate hospitalization via ambulance. In any event, and wholly apart from the absence of any proof that a conclusion of nonliability actually motivated any employee or agent of the Authority, such a belief in these

circumstances would be unreasonable *(cf., Merchants Mut. Ins. Co. v Hoffman,* 86 AD2d 779, *affd* 56 NY2d 799).

At the very least, there was *exposure* to liability based on a possible claim of lack of supervision *(Gallo v Surf & Pool Corp.,* 4 AD2d 762), as well as the interrelated question of the hazards presented by the equipment itself, wholly apart from the presence or absence of defects *(Hunt v Board of Educ.,* 43 AD2d 397; *Rosario v City of New York,* 157 AD2d 467). Furthermore, Officer Jackson's report is not final, suggesting as it does that an adult witness to the accident may be available. The Authority's failure to pursue this lead, while fresh, cannot be regarded as reasonable under the circumstances.

The argument that Empire acquiesced in the deficient procedures adopted by the Authority, and that an accepted course of conduct arose between the parties foreclosing the carrier's disclaimer, was not raised below, and is inappropriately pressed for the first time on appeal. Furthermore, there is *no* evidence in the record to support such a contention.

Accordingly, the order of Supreme Court, New York County (Herman Cahn, J.), entered June 4, 1991, which declared and adjudged, after a bench trial on a framed issue, that the Authority was entitled to be defended and indemnified by Empire in the underlying main action herein, should be reversed, on the law, the third-party complaint dismissed, without costs, and the matter remanded for the settlement and entry of an appropriate declaratory judgment in favor of Empire.

SULLIVAN, J. (dissenting). The majority concludes that the 10-year delay between the infant plaintiff's accident and the Authority's notification thereof to Empire constituted a breach of the provision of the insurance policy which required the Authority to give notice of an occurrence "as soon as practicable." Since I think that in the circumstances presented the Authority complied with this condition, I would affirm.

While the giving of the required notice is a condition precedent to the insurer's liability, circumstances such as a lack of knowledge that an accident has occurred may excuse a delay in giving notice. *(See, Security Mut. Ins. Co. v Acker-Fitzsimons Corp.,* 31 NY2d 436, 440-441.) Here, the only evidence of the Authority's knowledge of the occurrence of the accident prior to its receipt in 1985 of the notice of claim is the report of its Police Department that the infant plaintiff

fell off a sliding pond which was found to be "without any defects," that she "seemed to be lapsing into unconsciousness, and going into convulsions," and was taken to the hospital. In my view, the filing of a report of an incident with the Authority's Police Department does not provide a basis for imputing knowledge of the facts constituting the claim to the Authority itself. The majority distinguishes *Tarquinio v City of New York* (84 AD2d 265, 270-271, *affd* 56 NY2d 950) and *Caselli v City of New York* (105 AD2d 251, 260) on the ground that those cases rest upon the notice requirements imposed on claimants by General Municipal Law § 50-e, while the Authority's duty of notification in this case is controlled by its obligation under the insurance policy. I fail, however, to see how this distinction undermines the applicability of the rationale underlying the section 50-e cases, namely, that a public corporation which has "numerous employees and departments and diverse operations" *(Adkins v City of New York,* 43 NY2d 346, 352), does not acquire notice through information disclosed to a division or branch. *(Tarquinio v City of New York, supra,* 84 AD2d, at 270-271.) The imposition of such a standard is not only unrealistic but unfair.

Moreover, even if the mere filing of a report by the Police Department were sufficient to impute knowledge of the facts stated therein to the Authority, I nevertheless would affirm. The contents of the police report were insufficient to trigger the Authority's obligation to notify Empire since there is no suggestion in the report that any defective condition chargeable to the Authority or any act or omission on its part caused the accident. Nor is there anything else contained in the report which would lead a reasonable person to perceive a potential liability on the part of the Authority. *(Cf., Security Mut. Ins. Co. v Acker-Fitzsimons Corp., supra,* 31 NY2d, at 442.) The report states that the area was "inspected immediately after and found dry" and that the sliding pond was "found without any defects". While the report indicates that an injury occurred, that alone is insufficient to activate the notice obligation. As this court stated in *875 Forest Ave. Corp. v Aetna Cas. & Sur. Co.* (37 AD2d 11, 13, *affd* 30 NY2d 726), in which the child of a tenant fell from a window in an apartment in a building owned by the insured, "There was nothing in the manner in which the accident occurred which would have suggested the possibility of a liability claim against [the insured], and we believe it would be unfair (under the provisions of the subject policy) to charge [the insured] in these

circumstances with the duty of giving notice when all it knew was simply that an injury occurred on its premises."

The majority would require the Authority to investigate every incident resulting in injury with an eye toward determining whether there is any possible theory on which a claim for liability could be predicated. But the law does not impose any such requirement. There must be something more than the mere happening of an incident to impose such a burden. *(See, supra.)* An insured's obligation is measured by what a reasonable person would do in the circumstances. *(Supra.)* A different conclusion "might burden an insured with the onerous responsibility of reporting each and every occurrence or event that comes to [its] knowledge." *(Supra,* at 13.) This is especially true here in view of Empire's routine defense of cases where it accepted the notice of claim as one of the two methods utilized by the Authority to notify it of a potential liability.

Moreover, even from the insurer's vantage point, the burdens imposed by the sheer volume of reported occurrences would render meaningless the advantages of early notice. The plain fact is that any prejudice to the insurer here is due to the tolling of the Statute of Limitations—a by-product of the injured plaintiff's infancy—and the court's grant of late notice of claim relief. These circumstances, however, constitute a risk it undertook when it wrote the policy.

The order should be affirmed.

MURPHY, P. J., and ROSENBERGER, J., concur with WALLACH, J.; SULLIVAN and RUBIN, JJ., dissent in an opinion by SULLIVAN, J.

Order of Supreme Court, New York County, entered June 4, 1991, which declared and adjudged, after a bench trial on a framed issue, that the Authority was entitled to be defended and indemnified by Empire in the underlying main action herein, is reversed, on the law, the third-party complaint dismissed, without costs, and the matter remanded for the settlement and entry of an appropriate declaratory judgment in favor of Empire.