■ MARGARET BROWN, as Administratrix of the Estate of JOEL CUNNINGHAM, Deceased, Respondent, v LAFONTAINE-RISH MEDICAL ASSOCIATES et al., Defendants, and ARTHUR KISSEL, Appellant. [822 NYS2d 527]—

Judgment, Supreme Court, Bronx County (Douglas McKeon, J.), entered October 25, 2004, after a jury trial, in an action for wrongful death arising out of an outpatient liposuction procedure performed at defendant clinic, awarding plaintiff estate compensatory damages in the principal amount of $368,086, and, insofar as appealed from, holding defendant-appellant clinic owner vicariously liable for the malpractice of defendants physicians, and awarding plaintiff punitive damages against appellant in the principal amount of $5 million, modified, on the facts, to vacate the award of punitive damages and direct a new trial thereon, and otherwise affirmed, without costs, unless, within 30 days after service of a copy of this order with notice of entry, plaintiff stipulates to reduce the award of punitive damages to the principal amount of $2.5 million, and to entry of an amended judgment in accordance therewith.

The trial court correctly held appellant vicariously liable, as a

matter of law, for the malpractice of defendants anesthesiologist and surgeon. The record established, inter alia, that the cause of death was complications of anesthesia and failure to have a working laryngoscope in the operating room, that appellant founded the clinic, and, as a principal thereof, interviewed, hired and paid its doctors and effectively controlled all aspects of its administration, and that the decedent did not seek out any physicians but rather selected the clinic, which advertised itself as a premier cosmetic surgery clinic and assigned physicians to particular procedures. Such evidence demonstrated an ostensible agency between the clinic and its physicians regardless of whether the physicians were independent contractors or employees of the clinic (*see Welch v Scheinfeld*, 21 AD3d 802, 808-809 [2005]).

Punitive damages were properly submitted to the jury upon a record containing ample evidence of reprehensible conduct evincing a gross indifference to patient care (*see Graham v Columbia Presbyt. Med. Ctr.*, 185 AD2d 753 [1992]; *Dahlke v Frankel*, 267 AD2d 54 [1999]; *Figueroa v Flatbush Women's Servs.*, 201 AD2d 613, 614 [1994]). The clinic represented that it was affiliated with world-renowned surgeons, when in reality it did not verify physicians' credentials. The clinic fraudulently billed insurance companies for procedures that were not performed or were cosmetic in nature. Defendant anesthesiologist was allowed to work independently at the clinic despite restrictions on her license requiring that she be supervised. Indeed, the conclusion of the medical examiner was that the decedent died from complications from general and local anesthesia. Defendant surgeon never met with the decedent, did not obtain consent to the surgery, and was allowed to fill in for another doctor at the last minute after the decedent was already under a general anesthesia. When the decedent's blood pressure and heart rate dropped precariously following surgery, there was no functioning laryngoscope in the operating room with which to reintubate him.

However, in conducting the de novo review of the punitive damages award pursuant to the applicable principles set out in *State Farm Mut. Automobile Ins. Co. v Campbell* (538 US 408, 418 [2003]), we find the award to be excessive. Certainly appellant's conduct, which was sufficiently reprehensible and reckless resulted in the decedent's physical harm and death. However, the award of $5 million is unwarranted and should be reduced to $2.5 million.

We have considered appellant's remaining arguments and find them to be without merit. Concur—Mazzarelli, J.P., Saxe, Nardelli and Sweeny, JJ.

McGuire, J., concurs in part and dissents in part in a memorandum as follows: I agree with the majority that Supreme Court's decision to direct a verdict in plaintiff's favor on the issue of defendant-appellant's vicarious liability for the malpractice of defendants anesthesiologist and surgeon was not erroneous. Unlike the majority, however, I believe we should underscore that this decision was not prudent from the perspective of judicial economy (*see Rosario v City of New York*, 157 AD2d 467, 472 [1990]), particularly given that the jury was required to resolve issues of fact with respect to the liability of other defendants (*see McDermott v Coffee Beanery, Ltd.*, 9 AD3d 195, 212 [2004, Saxe, J., concurring] ["even where the trial court perceives the facts to be entirely one-sided, the far better course is to leave to the jury the initial determination of the essential factual issues" relating to liability, given that it is the jury's role to find the facts and the trial court "always has the option of thereafter granting a judgment notwithstanding the verdict"]).

In any event, I am unable to agree with the majority's punitive damages award. The United States Supreme Court has made clear that "few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process" (*State Farm Mut. Automobile Ins. Co. v Campbell*, 538 US 408, 425 [2003]). And as the Supreme Court immediately went on to state, it had concluded in *Pacific Mut. Life Ins. Co. v Haslip* (499 US 1 [1991]) "that an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety" (*State Farm*, 538 US at 425).

The award, even as further reduced by this Court, is excessive. Here, appellant was found vicariously liable for conduct constituting medical malpractice committed by others, the defendants anesthesiologist and surgeon, against whom no punitive damages were awarded (*see Loughry v Lincoln First Bank*, 67 NY2d 369, 378 [1986] ["punitive damages can be imposed on an employer for the intentional wrongdoing of its employees only where management has authorized, participated in, consented to or ratified the conduct giving rise to such damages, or deliberately retained the unfit servant" (citation omitted)]). The wrongdoing of the anesthesiologist and surgeon, moreover, was not intentional. Also, the punitive damages were awarded for conduct by appellant other than the conduct that forms the basis for his vicarious liability (i.e., facility operated with reckless disregard for health and safety of patients). Without question, the conduct for which punitive damages were

awarded was reprehensible. But a "defendant's dissimilar acts, independent from the acts upon which liability was premised, may not serve as the basis for punitive damages" (*State Farm*, 538 US at 422-423).

In light of appellant's failure to object at trial that punitive damages could not be awarded as a matter of law, we need not and should not decide that issue now (*Nelson v Times Sq. Stores Corp.*, 110 AD2d 691, 691 [1985], *appeal dismissed* 67 NY2d 645 [1986]). The punitive damages award, however, should be reduced substantially.