(December 2, 2010)

■ HELEN GARBER, Respondent-Appellant, v JERRY H. LYNN, D.D.S., Respondent and SOL STOLZENBERG, D.M.D., Doing Business as TOOTHSAVERS, et al., Appellants-Respondents. [913 NYS2d 175]—

Order, Supreme Court, New York County (Michael D. Stallman, J.), entered January 16, 2009, which denied the motion by defendants Sol Stolzenberg, D.M.D., doing business as Toothsavers, and Raimone Perez to set aside the verdict and for a new trial and denied plaintiff's cross motion for an additur to the jury's award of $25,000 for past and future pain and suffering, modified, on the facts, to the extent of vacating the award for punitive damages and directing a new trial on that issue unless plaintiff stipulates, within 30 days of service of a copy of this order, to decrease the award for punitive damages to $100,000, and vacating the award of $25,000 for past and future pain and suffering and directing a new trial on that issue unless defendants stipulate, within 30 days of service of a copy of this order, to increase the award for past pain and suffering to $90,000, and the award for future pain and suffering to $60,000, and otherwise affirmed, without costs.

The jury found, inter alia, that defendant Toothsavers departed from good and accepted dental practice in fitting plaintiff's temporary upper bridge and that this deviation was a substantial factor in causing her injuries. We find that the evidence shows that defendants' ill-fitting bridge not only caused plaintiff to suffer severe pain but has also caused her gums to

become incredibly swollen, to bleed easily and to trap bacteria. Problems with the bridge impaired her ability to chew and prevented her from being able to properly clean the area.

Indeed, the record reveals that at the time of trial plaintiff's gums had pulled away from the bone and bled when touched. Moreover, because defendants failed to properly fit crowns onto plaintiff's teeth, bacteria invaded her gingival pockets causing them to increase in size, allowing an infection to enter the jaw bone. According to plaintiff's expert, in order to restore her upper mouth, plaintiff will require approximately 15 additional implants and 14 crowns and her lower mouth will require approximately seven implants. There also remains a possibility that plaintiff will require root canal work due to nerve damage. Based upon this record, we find that the award for past and future pain and suffering is not reasonable compensation (CPLR 5501 [c]; *see Dansby v Trumpatori*, 24 AD3d 192 [2005]; *Guiton v Gottlieb*, 236 AD2d 203 [1997]).

Contrary to defendants' argument, the jury's liability determination was not inherently inconsistent. Nor can it be said that "there is simply no valid line of reasoning and permissible inferences which could possibly lead rational men to the conclusion reached by the jury on the basis of the evidence presented at trial" (*Cohen v Hallmark Cards*, 45 NY2d 493, 499 [1978]). Moreover, it is well settled that courts should refrain from speculating about a jury's deliberative process (*see Dubec v New York City Hous. Auth.*, 39 AD3d 410, 411 [2007]).

Irrespective of whether all the dental services rendered to plaintiff could be considered to have been performed by employees of Toothsavers or on Toothsavers' behalf, the interrogatory asking whether Toothsavers had departed from good and accepted dental practice in diagnosing plaintiff and formulating her treatment may have been confusing, since it failed to make clear whether it referred to the original treatment plan or the plan as it evolved and it failed to identify and particular aspect of any treatment plan. However, since the basis for plaintiff's claim that she was injured by the treatment rendered to her at Toothsavers was not so much the treatment plan as the fit and placement of the temporary bridge, which the jury also found to have been a departure from good and accepted dental practice and a substantial factor in causing her injuries, any error in that regard was harmless.

The dissent adopts Toothsavers' argument that the issue of punitive damages should not have been submitted to the jury. However, there was considerable evidence that, despite the fact that defendant Perez was not licensed to practice dentistry in

New York and therefore was not permitted to make an impression for a bridge or to insert a bridge, it was Perez who always fit, placed, adjusted and recemented plaintiff's temporary bridge. The unlicensed practice of dentistry is a crime, and there was ample evidence from which a jury could conclude that Toothsavers was callous in its indifference to such illegality by having Perez repeatedly conduct these complicated procedures. By having Perez fabricate, place and adjust plaintiff's temporary bridge, Toothsavers was engaging in exactly the sort of willful or wanton negligence or recklessness that evinces a gross indifference to patient care, warranting deterrence, and supporting submission of the issue of punitive damages to the jury (*see Randi A. J. v Long Is. Surgi-Ctr.*, 46 AD3d 74 [2007]; *Brown v LaFontaine-Rish Med. Assoc.*, 33 AD3d 470 [2006]). However, upon de novo review of the jury's punitive damages award, we find $260,000 excessive, and we reduce it to $100,000 (*see Brown* at 471).

We have reviewed the parties' remaining contentions and we find them unavailing. Concur—Gonzalez, P.J., Andrias, Renwick and Manzanet-Daniels, JJ.

Catterson, J., dissents in a memorandum as follows: Because I do not believe that the level of culpability of the defendants in this case warrants the imposition of punitive damages, I respectfully dissent and would vacate the punitive damages award of $260,000.

On July 29, 2005, Helen Garber consulted with Toothsavers to inquire about repairing her two chipped front teeth. Then 71 years of age and diabetic, Ms. Garber was also missing at least 13 teeth, previous dental work was eroding, and she had decay in at least one tooth. Following X rays and an examination, she was advised that a comprehensive restorative plan to treat her dental conditions required implants, caps, and permanent bridgework.

She was initially provided with a cost quote of approximately $25,000, which was reduced to $5,000 once she explained that she was on a fixed income and that amount was all she could afford. She paid the fee, and treatment began that day.

Her upper teeth were ground down, and a temporary bridge was fabricated and fitted. On later visits, lower teeth were extracted and a dental implant procedure was performed. Throughout her treatment and despite several repairs, the temporary bridge was uncomfortable and ill-fitting causing Ms. Garber persistent pain from irritated and swollen gums, which prevented her from being able to chew properly.

The defendants' dental records describe Ms. Garber as a dif-

ficult patient who delayed the placement of the permanent bridge, thereby prolonging her own discomfort with the temporary bridge because she was unhappy with the aesthetics of one tooth that did not resemble one in her magazine clipping.

Prior to the fitting of the permanent bridge which the defendants allege would likely have alleviated the pain she was experiencing and prevented the ensuing infection, she terminated treatment at Toothsavers and utilized the temporary bridge for *another three years* as she could not afford to have it replaced. She then commenced this dental malpractice action.

At trial in June 2008, the jury found that the fit of the upper temporary bridge and the treatment plan and subsequent procedures implemented by Toothsavers departed from good and accepted standards of care and were substantial factors in the cause of Ms. Garber's injuries. The jury further found that defendant Lynn departed from good and accepted standards of care in the manner in which he diagnosed and developed the treatment plan, but that his departure had not been a substantial factor in causing any of her injuries.

Ms. Garber was awarded a total of $100,000 in compensatory damages including $75,000 in past and future dental expenses, $10,000 for past pain and suffering and $15,000 for future pain and suffering over five years. The court reserved decision on the issue of punitive damages, and, in a separate trial held shortly thereafter, a new panel of jurors awarded $260,000 in punitive damages.

The court denied the motion by defendants Sol Stolzenberg, D.M.D., doing business as Toothsavers, and Raimone Perez (hereinafter collectively referred to as Toothsavers) to set aside the verdict or, in the alternative, for a new trial. It also denied the plaintiff's cross motion for additur to the jury's award of $25,000 for past and future pain and suffering.

Toothsavers appealed, arguing in part that punitive damages are unwarranted in the absence of proof of malice or vindictive motive, outrageous or oppressive conduct, or wanton disregard for public safety. I agree for the reasons set forth below.

It is well settled that punitive damages are assessed, not to redress the private wrong committed, but to reflect society's condemnation of a tortfeasor's morally culpable conduct. (*Walker v Sheldon*, 10 NY2d 401, 404-405 [1961], citing *Toomey v Farley*, 2 NY2d 71, 83 [1956].) As such, punitive damages are awarded to inflict punishment and deter misconduct when there are aggravating circumstances that imply an "evil or . . . wrongful motive" (*Jones v Hospital for Joint Diseases & Med. Ctr.*, 96 AD2d 498, 498 [1983], quoting *Le Mistral, Inc. v Columbia*

*Broadcasting Sys.*, 61 AD2d 491, 495 [1st Dept 1978], *appeal dismissed* 46 NY2d 940 [1979]; *Walker*, 10 NY2d at 404-405), a "high degree of moral turpitude" (*Parker v Crown Equip. Corp.*, 39 AD3d 347, 348 [1st Dept 2007]), or "wanton disregard for public safety" (*Longo v Armor El. Co.*, 307 AD2d 848, 850 [1st Dept 2003]).

The level of egregiousness of the defendant's conduct must exceed that of ordinary malpractice and verge on criminality. (*Prozeralik v Capital Cities Communications*, 82 NY2d 466, 479 [1993] [" 'has the character of outrage frequently associated with crime' " (quoting Prosser and Keeton, Torts § 2, at 9 [5th ed])]; *McDougald v Garber*, 73 NY2d 246, 254 [1989] ["intentional, malicious, outrageous, or otherwise aggravated beyond mere negligence"], citing *Sharapata v Town of Islip*, 56 NY2d 332, 335 [1982]; *Lavanant v General Acc. Ins. Co. of Am.*, 212 AD2d 450, 451 [1st Dept 1995] ["wanton dishonesty as to imply criminal indifference to civil obligations which is aimed at the public"].)

Even where the plaintiff can show gross negligence, punitive damages are awarded only in " ' "singularly rare cases" . . . involving an improper state of mind or malice or cases involving wrongdoing to the public.' " (*Bothmer v Schooler, Weinstein, Minsky & Lester*, 266 AD2d 154, 154 [1st Dept 1999], quoting *Anonymous v Streitferdt*, 172 AD2d 440, 441 [1st Dept 1991], quoting *Rand & Paseka Mfg. Co. v Holmes Protection*, 130 AD2d 429, 431 [1987], *lv denied* 70 NY2d 615 [1988].)

Here, Toothsavers committed dental malpractice, but Ms. Garber presented no evidence that Toothsavers was motivated by ill will or dishonesty that approaches criminal misconduct. Further, Toothsavers' treatment of Ms. Garber cannot be considered grossly indifferent to her care or patient care generally so as to endanger the public. (*Cf. Brown v LaFontaine-Rish Med. Assoc.*, 33 AD3d 470, 471 [1st Dept 2006] [punitive damages were awarded in a wrongful death action where the defendant clinic failed to verify physician credentials, engaged in fraudulent billing, lacked functioning life-saving surgical equipment, permitted unsupervised administration of anesthesia, and there was "ample evidence of reprehensible conduct evincing a gross indifference to patient care"]; *see also Williams v Halpern*, 25 AD3d 467, 468 [1st Dept 2006] [upholding punitive damages when a physician's negligent injection practice resulted in several patients contracting hepatitis demonstrating "a gross indifference to patient care and a danger to the public"].) Although there was some dispute at trial as to whether a technician rather than a licensed dentist as required in New York fabricated the

temporary bridge, this deviation would not constitute a level of willful or wanton negligence or recklessness that evokes a quality of outrageousness or moral turpitude justifying punitive damages.

The plaintiff's argument on her cross appeal, that the award for past and future pain and suffering deviated from reasonable compensation granted in comparable cases, ought to be rejected. A jury's verdict awarding compensatory damages should not be disturbed if it was supported by valid reasoning and permissible inferences from the evidence at trial, was not against the weight of the evidence, and did not deviate materially from reasonable compensation under the circumstances. (*Mejia v JMM Audubon*, 1 AD3d 261, 262 [1st Dept 2003], citing *Cohen v Hallmark Cards*, 45 NY2d 493, 499 [1978]; CPLR 4404 [a]; 5501 [c].)

In considering the testimony of the parties and their witnesses, the jury, at the court's instruction, may well have credited Toothsavers' argument that Ms. Garber failed to mitigate damages by prematurely abandoning treatment, and decreased her award for pain and suffering accordingly. Because Ms. Garber's case is distinguishable from those with higher awards and her award for pain and suffering of $25,000 can be logically justified, an increase in compensatory damages by this court is insupportable.

For these reasons, I would vacate the punitive damages award of $260,000 and otherwise affirm.